STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

CITY OF OAK CREEK, Defendant-Appellant.

Supreme Court

*No. 97–2188. Oral argument October 6, 1999.—Decided February 10, 2000.*

## 2000 WI 9

(Also reported in 605 N.W.2d 526.)

614

For the plaintiff-respondent-petitioner the cause was argued by *Joanne F. Kloppenburg*, assistant attorney general with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Lawrence J. Haskin*, City Attorney and *Lawrie J. Kobza, Richard L. Bolton, M. Tess O'Brien-Heinzen* and *Boardman, Suhr, Curry & Field, LLP*, Madison and oral argument by *Lawrence J. Haskin*.

¶ 1. N. PATRICK CROOKS, J. The attorney general, claiming to be acting on behalf of the State of Wisconsin, brought an action for injunctive relief under Wis. Stat. §§ 30.294, 823.01, and 832.02 (1995–96)[1] to require the city of Oak Creek to remove a concrete

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 text unless otherwise noted.

channel from a quarter mile length of Crawfish Creek, a tributary that flows through the city. The attorney general alleged that Wis. Stat. § 30.056, which exempts the city of Oak Creek from certain permit requirements related to the concrete channel, is unconstitutional. The attorney general also alleged that the concrete channel creates a public nuisance under both Wis. Stat. § 30.294 and the common law. The Milwaukee County Circuit Court, the Honorable Christopher R. Foley presiding, agreed that the statute is unconstitutional and ordered the concrete channel's removal. The city of Oak Creek appealed. The court of appeals reversed in a published decision, *State v. City of Oak Creek*, 223 Wis. 2d 219, 223, 558 N.W.2d 380 (Ct. App. 1998), holding that the attorney general may not challenge the constitutionality of § 30.056. We affirm the court of appeals. The legislature has not granted the attorney general the statutory authority to attack the constitutionality of § 30.056. Further, no other constitutional or common law doctrine gives the attorney general such authority. Therefore, the attorney general lacks standing to bring this challenge.

I.

¶ 2. Crawfish Creek is a navigable waterway that flows through Oak Creek. The west branch of Crawfish Creek is an intermittent tributary of the Root River System. In 1985, the city of Oak Creek (Oak Creek) lined one-quarter mile of the west branch with a concrete channel. Oak Creek created the concrete channel in an effort to prevent local flooding and drainage problems that had damaged the area in the past, especially after the development of a nearby subdivision.

617

¶ 3. However, Oak Creek did not notify, or request a permit from, the DNR before the channel was built. The DNR had previously warned Oak Creek that it must receive a permit to build any structure in the creek that would alter the creek's course because the creek is a navigable waterway. When the DNR learned that the creek had been lined with a concrete channel that alters the creek's course, it filed a petition with the Division of Hearings and Appeals of the Department of Administration seeking to restore the creek to its natural state. The DNR alleged violations of Wis. Stat. §§ 30.12,[2] 30.195,[3] and 30.294.[4]

¶ 4. In 1991, the hearing examiner found, after a contested hearing, that Oak Creek violated Wis. Stat. §§ 30.12, 30.195, and 30.294 in lining the creek bed

---

[2] Wisconsin Stat. § 30.12(1) provides, in part:

[U]nless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

 (a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

 (b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

The DNR apparently relied upon the statutory provisions from 1987–88, which are essentially the same as the 1995–96 provisions quoted here.

[3] Wisconsin Stat. § 30.195(1) provides: "No person may change the course of or straighten a navigable stream without a permit issued under this section or without otherwise being expressly authorized by statute to do so."

[4] Wisconsin Stat. § 30.294 provides: "Every violation of this chapter is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by any person."

618

with concrete. A number of findings of fact were made regarding the significance of the creek as a wildlife habitat and the concrete channel's adverse effects on that habitat. The hearing examiner ordered Oak Creek to take out the concrete and restore the creek bed.

¶ 5. Oak Creek pursued judicial review of the decision and order in circuit court. At the same time, the Wisconsin Legislature enacted Wis. Stat. § 30.055 (1991–92),[5] which exempted Oak Creek from the necessity of acquiring a permit for the concrete channel and also permitted the concrete channel to remain in the creek. The legislature passed § 30.055 as part of the state budget bill. The effect of § 30.055 was to override the requirements of Wis. Stat. §§ 30.12, 30.195, and 30.294.

¶ 6. In response to the creation of Wis. Stat. § 30.055, the state public intervenor[6] moved to intervene in the ongoing circuit court case to challenge the statute's constitutionality. The Milwaukee County Circuit Court granted the public intervenor's motion. In a decision dated March 2, 1993, the circuit court, the

---

[5] Wisconsin Stat. § 30.055 provided:

**Exemption from certain permit requirements.** Notwithstanding ss. 30.12, 30.19, 30.195 and 30.294, the city of Oak Creek may not be required to remove any structure or concrete or other deposit that was placed in Crayfish Creek in the city of Oak Creek before June 1, 1991, and may continue to maintain the structure, concrete or deposit without having a permit or other approval from the department.

[6] The state public intervenor formally intervenes in administrative proceedings "to protect public rights in water and other natural resources, with the approval of the public intervenor board." Wis. Stat. § 23.39(2)(a)–(b). The public intervenor used to be an assistant attorney general, Wis. Stat. § 165.07 (1981–82), but the position now exists in the Department of Natural Resources. Wis. Stat. § 23.39.

Honorable George A. Burns presiding, concluded that the method by which the statute was created violated Wis. Const. art. IV, § 18.[7] Moreover, the circuit court found that as a navigable waterway, the creek needed to be restored. Finally, the court concluded that the statute violated equal protection under Wis. Const. art. I, § 1 and the Public Trust Doctrine under Wis. Const. art. IX, § 1.

¶ 7. Oak Creek appealed the decision. The court of appeals affirmed. The court of appeals held that Wis. Stat. § 30.055 was unconstitutional according to the two-part "methodology for determining whether a bill or statute violates Wis. Const. art. IV, § 18."[8] *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 442, 518 N.W.2d 276 (Ct. App. 1994). The court of appeals also held that credible and substantial evidence supported the hearing examiner's findings that the creek is navigable and in need of restoration. *Id.* at 433–434.

¶ 8. In its 1994 decision, the court of appeals determined that Wis. Stat. § 30.055 did not deserve a presumption of constitutionality. *Id.* at 437–39. The court of appeals also found that the legislation was a private or local law, because it was "geographically specific and entity specific." *Id.* at 440 (quoting *Soo Line R.R. Co. v. DOT*, 101 Wis. 2d 64, 75, 303 N.W.2d 626 (1981), for the proposition that "[a] private law is gen-

[7] Wisconsin Const. art. IV, § 18 provides: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

[8] That methodology was set forth by this court in *Davis v. Grover*, 166 Wis. 2d 501, 520, 480 N.W.2d 460 (1992), which stated that the first inquiry involves "whether the process in which the bill was enacted deserves a presumption of constitutionality." The second inquiry involves "whether the bill is private or local." *Id.*

620

erally viewed as one applying to or affecting a particular individual or entity"). Therefore, as a private or local law, the legislation was subject to Wis. Const. art. IV, § 18, which requires private or local laws to be passed in single-subject bills. *Id.* at 442. The court of appeals concluded that under art. IV, § 18, the statute was unconstitutional because it was not passed in a single-subject bill.[9] *Id.* at 442–43.

¶ 9. In 1996 the legislature passed another bill that created an exemption for the channel. This time, the bill was not enacted as part of a budget bill. Assembly Bill 424 was introduced in the Assembly on June 1, 1995, as a bill pertaining to the destruction or damage of nonconforming structures in disasters unrelated to floods. A later amendment to Assembly Bill 424 in the State Senate repealed Wis. Stat. § 30.055 and created Wis. Stat. § 30.056. Senate amendment 1 stated in part:

> 30.056 **Exemption from certain permit requirements.** Notwithstanding ss. 30.12, 30.19, 30.195 and 30.294, the city of Oak Creek may not be required to remove any structure or concrete or other deposit that was placed in Crayfish [sic] Creek in the city of Oak Creek before June 1, 1991, and may continue to maintain the structure, concrete or deposit without having a permit or other approval from the department.

---

[9] Since the court determined that Wis. Stat. § 30.055 was unconstitutional under Wis. Const. art. IV, § 18, it did not address the circuit court's conclusions that § 30.055 violated equal protection or the Public Trust Doctrine. *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 434 n.3, 518 N.W.2d 276 (1994)(citing *Martinez v. DILHR*, 160 Wis. 2d 272, 275 n.1, 466 N.W.2d 189 (Ct. App. 1991), *rev'd on other grounds*, 165 Wis. 2d 687, 478 N.W.2d 582 (1992)).

The Senate adopted the amendment and passed the amended bill. The Assembly also concurred in the bill as it was amended. Governor Thompson signed the amended bill, and it was published in 1996 as 1995 Wisconsin Act 455.

¶ 10. In response, the attorney general commenced an action against the statutory exemption, claiming that the new statute was also unconstitutional. The attorney general further claimed that the channel constituted a statutory public nuisance and a common law public nuisance. The attorney general moved for summary judgment, and Oak Creek moved to dismiss the statutory public nuisance claim. In a decision dated April 7, 1997, Circuit Court Judge Christopher R. Foley ruled in favor of the attorney general. The circuit court found that the attorney general had standing to bring the action, that the statute was unconstitutional, and that the channel created a nuisance.

¶ 11. On a second appeal by Oak Creek, the court of appeals reversed. *State v. City of Oak Creek*, 223 Wis. 2d at 227. The court of appeals held that the attorney general lacked standing to challenge the statute's constitutionality. *Id.* at 227. It based its reasoning on this court's decision in *Public Intervenor v. DNR*, 115 Wis. 2d 28, 339 N.W.2d 324 (1983). *Public Intervenor* held that legislative authority must support the actions of both the attorney general and his assistants, and that no such authority exists for any person from the attorney general's office to challenge the constitutionality of a law or rule. 115 Wis. 2d at 36–37. The court of appeals reiterated "*Public Intervenor*'s recognition that the attorney general in Wisconsin has limited powers and, accordingly, the 'duty to defend'—not attack—'the constitutionality of state statutes.' " *Oak Creek*, 223 Wis.

2d at 227. On that basis, the court of appeals concluded that the attorney general lacked the necessary statutory authority to challenge the constitutionality of the statute in this case.

## II.

¶ 12. We begin by briefly relating the history of the attorney general's office in Wisconsin, because that history plays a significant role in our holding in the present case. The position of attorney general, as it now exists in the United States, had its genesis in England. Scott Van Alstyne & Larry J. Roberts, *The Powers of the Attorney General in Wisconsin,* 1974 Wis. L. Rev. 721, 723. The kings of England appointed attorneys to represent them in court because they could not appear personally. *Id.* Of those attorneys, "the attorney general had become the only person who could take legal action in the name of the crown without special authorization." *Id.* at 724. Essentially, "the attorney general became the legal advisor to the crown." *Id.* at 724 n.17.

¶ 13. Colonial governments preserved the position in America. *Id.* at 726. In approximately 1643, the first attorney general in the colonies appeared in Virginia. *Id.*

¶ 14. The office of attorney general in Wisconsin existed from the beginning of the Wisconsin territory in 1836. *Id.* at 731. The Organic Act that created the territory provided for the appointment of an attorney[10] to serve the territory. *Id.* (citing Act of April 20, 1836, ch. 54, § 10, 5 Stat. 10.)

---

[10] The attorney general later became an elected office. *See* Scott Van Alstyne & Larry J. Roberts, *The Powers of the Attorney General in Wisconsin,* 1974 Wis. L. Rev. 721, 732.

¶ 15. The attorney general's office was proposed in a draft article at the first state constitutional convention in 1846. Van Alstyne & Roberts, 1974 Wis. L. Rev. at 731 (citing Wis. Const. art. IV, § 3 (1846)(proposed)). The proposed article specified that the attorney general's powers and duties "shall be prescribed by law." *Id.* (quoting Wis. Const. art. IV, § 3 (1846)(proposed)). Wisconsin had two constitutional conventions because the first constitution was not ratified. *State v. Hansford*, 219 Wis. 2d 226, 235 n.11, 580 N.W.2d 171 (1998). Although the proposed 1846 constitution was rejected, the article pertaining to the attorney general was included in the 1848 constitution, the constitution that was adopted. Van Alstyne & Roberts, 1974 Wis. L. Rev. at 732.

¶ 16. The territorial statutes and later the state statutes constituted the only law prescribing the attorney general's duties in 1848. *Id.* (citing An Act Concerning the Attorney General, Wis. Laws 1848). A revision of certain statutes in 1849, as well as other miscellaneous references in the statutes to the attorney general, further defined those powers. *Id.* at 733. Significantly, the statutes made no reference to any common-law powers. *Id.* at 735–36.

### III.

¶ 17. With this brief history in mind, we now address the issue presented before us: whether the attorney general has standing to attack the constitutionality of Wis. Stat. § 30.056. A party has standing to challenge a statute's constitutionality if the party has a sufficient interest in the outcome of a justiciable controversy " 'to obtain judicial resolution of that controversy.' " *Norquist v. Zeuske*, 211 Wis. 2d 241,

247, 564 N.W.2d 748 (1997)(quoting *State ex rel. First Nat'l Bank of Wis. Rapids v. M&I Peoples Bank of Coloma*, 95 Wis. 2d 303, 307–08, 290 N.W.2d 321 (1980)). Standing is determined by a two-step analysis. *Id.* A court must determine "(1) whether the plaintiff has suffered a threatened or actual injury, and (2) whether the interest asserted is recognized by law." *Id.* at 247–48 (citations omitted).

¶ 18. We examine the second question in the standing analysis first because it is dispositive in this case. Determining whether the attorney general's asserted interest is recognized by law requires us to interpret Wis. Const. art. VI, § 3.[11] Interpretation of a constitutional provision is subject to *de novo* review. *Hansford*, 219 Wis. 2d at 234; *Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996)(citing *Polk County v. State Pub. Defender*, 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994)). This court examines three sources in determining a constitutional provision's meaning: "the plain meaning of the words in the context used; the constitutional debates and the practices in existence at the time of the writing of the constitution; and the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption." *Thompson*, 199 Wis. 2d at 680.

¶ 19. We begin with the plain meaning of Wis. Const. art. VI, § 3. As stated above, art. VI, § 3 defines the scope of the attorney general's powers: "[t]he powers, duties and compensation of the. . .attorney general shall be prescribed by law." This court has consistently

[11] The 1848 constitution moved the article pertaining to administrative officers to Article VI from its previous position in Article IV in the 1846 constitution.

stated that the phrase "prescribed by law" in art. VI, § 3 plainly means prescribed by statutory law.

¶ 20. The first case that examined this phrase was *State v. Milwaukee Elec. Ry. & Light Co.*, 136 Wis. 179, 190, 116 N.W. 900 (1908).[12] This court very clearly stated:

> In Wisconsin, otherwise than in many if not most states, the powers of the attorney general are strictly limited. He is a constitutional officer, but by the constitution he is given only such powers as "shall be prescribed by law." Sec. 3, art. VI, Const. It is therefore essential to the maintenance of an action brought by the attorney general *ex officio* and *sua sponte* that we should find some statute authorizing it.

*Id.* The court held that the attorney general could not bring an action in circuit court to reclaim a corporation's assets and suspend or remove the corporation's officers, because the legislature had not "assert[ed] a

---

[12] The dissent suggests at ¶ 84 that *State v. Milwaukee Elec. Ry. & Light Co.*, 136 Wis. 179, 116 N.W. 900 (1908), is "unpersuasive" precedent. We recognize that *Milwaukee Electric* does not delve into an extensive exploration of the constitutional history underlying its decision. However, that does not mean that *Milwaukee Electric*'s holding is incorrect. State constitutional history strongly supports *Milwaukee Electric*'s holding, as will be discussed later in this opinion. Moreover, the rationale in *Milwaukee Electric* is logical. The court examined the language in Wis. Const. art. VI, § 3 and appeared to base its holding on the plain meaning of the phrase, "prescribed by law." *Id.* at 190. As we stated in *Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996), "the plain meaning of the words in the context used" is a valid method for interpreting a constitutional provision.

public interest in some such situation sufficiently direct to warrant the state to bring suit." *Id.* at 185.

¶ 21. Similarly, this court held in *State ex rel. Haven v. Sayle,* 168 Wis. 159, 163, 169 N.W. 310 (1918), that the attorney general "must find authority in the statute when he sues in the circuit court in the name of the state or in his official capacity." In *State v. Snyder,* 172 Wis. 415, 417, 179 N.W. 579 (1920), we reiterated that "[i]n this state the attorney general has no common-law powers or duties." *See also State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 538, 118 N.W.2d 939 (1963); *State ex rel. Reynolds v. Smith,* 19 Wis. 2d 577, 584, 120 N.W.2d 664 (1963); *State ex rel. Beck v. Duffy,* 38 Wis. 2d 159, 163, 156 N.W.2d 368 (1968)(abrogated on other grounds by *State v. Antes,* 74 Wis. 2d 317, 246 N.W.2d 671 (1976)).

¶ 22. This court has further stated that "[t]he attorney general is devoid of the inherent power to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens and cannot act for the state as *parens patriae.*" *In re Estate of Sharp,* 63 Wis. 2d 254, 261, 217 N.W.2d 258 (1974)(citing Arlen C. Christenson,[13] *The State Attorney General,* 1970 Wis. L. Rev. 298). This is because the Wisconsin Constitution removed all of the attorney general's "powers and duties which were found in that office under common law." *Id.* Therefore, "[u]nless the power to [bring] a specific action is granted by law, the office of the attorney general is powerless to act." *Id.*

[13] Arlen C. Christenson was the Deputy Attorney General of Wisconsin from 1966–68, and he was the Executive Assistant Attorney General from 1968–69. Arlen C. Christenson, *The State Attorney General,* 1970 Wis. L. Rev. 298.

Accordingly, this court held that the attorney general lacked statutory authority to intervene in estate proceedings, and as such, he was not an interested party and had no standing in the litigation. *Id.*

■

¶ 23. The most recent case in which we examined the attorney general's powers was *Public Intervenor v. DNR*, 115 Wis. 2d 28, 339 N.W.2d 324 (1983). In *Public Intervenor*, we held that the public intervenor lacked standing to challenge the constitutionality of an administrative code rule. 115 Wis. 2d at 41. The court noted that not only was there no "statutory provision giving the attorney general or his assistants the power to challenge the constitutionality of a law or rule of this state or one of its agencies," but, "[t]o the contrary, it is the attorney general's duty to defend the constitutionality of state statutes."[14] *Id.* at 36–37 (citation omitted). The court explained that the rules applicable to the attorney general applied to the public intervenor, who was an assistant attorney general at the time. *Id.* at 37.

¶ 24. In sum, it is well established by case law that according to the plain meaning of Wis. Const. art. VI, § 3, the attorney general's powers are prescribed only by statutory law.

¶ 25. Underlying the long-settled decisions regarding the attorney general's powers and duties is the history of art. VI, § 3. The history of art. VI, § 3 suggests that the drafters of the Wisconsin Constitu-

---

[14] The attorney general has similarly recognized his duty to defend the constitutionality of the statutes stating, "[o]nce legislation is enacted it becomes the affirmative duty of the Attorney General to defend its constitutionality." 71 Op. Att'y Gen. 195, 196 (1982).

tion intended the Wisconsin statutes to be the sole authority for the attorney general's powers.

¶ 26. The first convention did not preserve a record of its debates. Alice E. Smith, 1 *The Hist. of Wis.* at 656 (1985). However, the provision as stated in the rejected 1846 constitution is still helpful. It stated: "[t]he powers, duties, and compensation of the. . .attorney general, shall be prescribed by law. Each of said officers shall receive as a compensation for his services yearly, a sum to be prescribed by law." Wis. Const. art. IV, sec. 3 (1846). The statement concerning compensation clearly refers to statutory law, since a salary cannot be determined by the common law. This point was borne out in the 1848 statutes, which set the attorney general's salary at 800 dollars per year. An Act Concerning the Att'y Gen., Sec. 8. Laws of Wis., 1848 St. Approved June 21, 1848.

¶ 27. A debate from the second constitutional convention further illustrates that the drafters meant statutory law when they used the phrase, "provided by law." Administrative Article sec. 3 was submitted in the same form as it was ultimately ratified. Journal and Debates of the 1848 Const. Convention, Wednesday, Dec. 22, 1847. A debate ensued, however, over a proposed amendment to the section that would "empower the governor to remove the treasurer from office in case of malfeasance." Journal at 91. Mr. Estabrook, a drafter, responded that he

> thought they were encroaching too much upon the business of ordinary *legislation*. The convention could not provide in detail how, by whom, and for what causes officers should be removed; and he gave notice that if this amendment should not prevail, he would offer one to the effect that officers

might be removed in such manner as might be *provided by law.*

Journal at 91 (emphasis added). This passage, while discussing the state treasurer, exemplifies the drafters' intent that the law they referred to in this constitutional provision meant statutory law. Mr. Estabrook's comment is also instructive because it explains why the drafters did not further detail the powers and duties of the attorney general or the treasurer. They carefully refrained from specifying the nature of these offices because they wanted the legislature to provide that detail.

¶ 28. Smith likewise explained the attitude prevailing at the second constitutional convention toward the relationship of the state constitution and legislation:

> What [Marshall M. Strong—a drafter] found pleasing in the work of the second convention was a confidence in the discretionary ability of the people. Rather than attempting to embody reform measures in the constitution, the convention was willing to leave decision-making to the people's elected representatives. Time and again the permissive phrases appeared in the document: "the Legislature may confer," "the Legislature shall provide for," "as the Legislature shall direct," "shall be fixed by law."

Smith, 1 The *Hist. of Wis.* at 675. In short, the drafters intended the constitution's phrase, "prescribed by law," to leave the decision-making regarding the attorney general's powers and duties to the legislature.

¶ 29. Finally, we examine the early legislation interpreting art. VI, § 3. We conclude that the legislature's codification of the attorney general's powers in

specific statutes has precluded any common-law powers.

¶ 30. The legislature manifested its interpretation of Wis. Const. art. VI, § 3 by prescribing the attorney general's powers in statutes. Two weeks after the first elected attorney general took office in 1848, the state legislature passed An Act Concerning the Att'y Gen., Wis. Laws 1848, which precisely defined his powers and duties.[15] Van Alstyne & Roberts, 1974 Wis.

---

[15] The act is quoted in full:

**The people of the State of Wisconsin, represented in Senate and Assembly, do enact as follows:**

Section 1. The attorney general shall appear for the state in the supreme court in all prosecutions for crime, and also in the trial and argument in said court of all causes criminal or civil in which the state may be a party or interested.

Sec. 2. The attorney general shall also when required by the governor or either branch of the legislature, appear for the state in any court or tribunal in any other causes criminal or civil in which the state may be a party or be interested.

Sec. 3. The attorney General [sic] shall consult with and advise the district attornies of the several counties of the state whenever requested by them or any or either of them in all matters appertaining to the duties of their offices, and shall make and submit to the legislature at the commencement of the annual session thereof a report of all the official business done by him during the preceding year: specifying the suits and prosecutions to which he may have so attended: the number of persons prosecuted: the crime for which, and the counties where such prosecutions were had: the result thereof: and the punishment awarded therefor.

Sec. 4. The attorney general shall when required attend the legislature during their session: and shall give his opinion upon all questions of law submitted to him by either branch of the legislature; or by the governor; and shall give his aid and advice in the arrangement and preparation of legislative documents and business when required by either branch of the legislature.

Sec. 5. Whenever any demand shall be made of the executive of this state conformably to law for the delivery over any person charged with any crime committed in any other state or territory, it shall be the duty of the attorney general upon request of the gover-

L. Rev. at 732 n.64. A number of statutes further defined the attorney general's powers in 1849.[16] *Id.* at 733–34.

nor, to give his opinion in writing upon all matters appertaining to such demand; and upon an arrest of such person so charged, shall when required appear in any court of this state to sustain the executive authority in ordering such arrest.

Sec. 6. The attorney general, before he enters upon the duties of his office shall execute unto the state of Wisconsin, a bond in duplicate, in the penal sum of ten thousand dollars, with not less than three sureties to be approved by the governor conditioned faithfully to perform and discharge the duties of attorney general for the state of Wisconsin, and to discharge the duties of one of the board of commissioners for the sale of the school and university lands and for the investment of the funds arising therefrom conformably to law, one of which bonds so executed in duplicate shall be filed in the office of the secretary of state, and the other in the office of the clerk of the supreme court.

Sec. 7. The legislature may from time to time require the attorney general to give additional security whenever it may be deemed expedient or necessary.

Sec. 8. The attorney general shall receive a salary of eight hundred dollars per annum to be paid to him out of the treasury of the state in equal quarterly payments which shall be in full for all services by him rendered both as attorney general, and as one of the board of commissioners for the sale of the school and university lands.

Laws of Wis., 1848 St. Approved June 21, 1848. ·

[16] The following 1849 statutory provisions relating to the attorney general were similar to the 1848 provisions: the attorney general was to represent the state in all civil and criminal matters before the supreme court, and at the request of the governor or legislature at the circuit court; he was to represent the state in bond or contract actions if requested by the governor or other state officer; he was to advise the district attorneys, as well as render legal opinions to the legislature, executive officers, and state superintendent; he was to prepare legal forms for certain state officers and report to them on his cases; he was to pay all state funds that had been deposited into the state treasury; he was to record the actions he had been

¶ 31. Significantly, the chief revisor of the 1849 statutes, Charles M. Baker, relied primarily on New York law in drafting the statutory sections relating to the powers and duties of the attorney general. Charles M. Baker Papers, Ms. Wis. State Historical Library, Box 10. *See also* Van Alstyne & Roberts, 1974 Wis. L. Rev. at 733 n.67. His handwritten draft, "Of the Attorney General," cites to 1 N.Y. R.S. 165 in the margins. New York's 1846 constitution describes the attorney general's powers and duties almost exactly as Wisconsin does: "the powers and duties of the attorney-general shall be such as now are or hereafter may be prescribed by law." *People v. Dorsey*, 29 N.Y.S.2d 637, 642 (Queens County Ct. 1941). In *Dorsey*, the court looked to that constitutional language to hold that the New York attorney general does not have any common law powers, and that the only powers the attorney general has are those specifically prescribed in the New York statutes. *Id.* at 643. Therefore, Baker relied on laws that had similarly precluded the attorney general's common-law powers.

---

involved in; he was to take a constitutional oath and file bond; and he would be paid a salary of 800 dollars per year. Van Alstyne & Roberts, 1974 Wis. L. Rev. at 733 (citing Wis. Rev. Stat., ch. 9, §§ 36–43 (1849). The legislature further expanded the attorney general's duties in other chapters. He was *ex officio* member of the Board of Canvassers. Wis. Rev. Stat. ch. 6 (1849). At the governor's request, he was to investigate corporations and examine its records and officers. Wis. Rev. Stat. ch. 54, § 22 (1849). He also could bring *quo warranto* actions. Wis. Rev. Stat. ch. 126, § 1 (1849). Finally, he could prosecute visitorial powers over corporations, Wis. Rev. Stat. ch. 114, § 5 (1849), and subpoena witnesses without a fee and prosecute for contempt, Wis. Rev. Stat. ch. 131, § 57 (1849). Van Alstyne & Roberts, 1974 Wis. L. Rev. at 733.

¶ 32. Essentially, as the legislature's conception of the attorney general's office grew, the legislature granted him more statutory powers. Van Alstyne & Roberts, 1974 Wis. L. Rev. at 734–35. This evidence indicates that the legislature intended to prescribe specifically the attorney general's powers: by defining what the attorney general's powers are in the statutes, the legislature demonstrated its intent to create a limited set of powers and duties for the attorney general.

¶ 33. Therefore, in accord with almost 100 years of precedent and with constitutional history, we conclude that the attorney general's actions must be authorized by statute. The attorney general is barred from challenging the constitutionality of Wis. Stat. § 30.056 because no statute grants him that authority.

¶ 34. In this case, the attorney general lacks the statutory authority to bring suit for several reasons. Wisconsin Stat. § 165.25 sets forth the attorney general's powers and duties. Although § 165.25(1) grants the attorney general the authority to represent the state as a party in civil cases in circuit court, that authority is not equivalent to authority to challenge the constitutionality of state statutes. *Public Intervenor*, 115 Wis. 2d at 36 (noting that even though § 165.25 includes "representing the state" as one of the attorney general's duties, that duty does not give rise to the power to challenge a statute's constitutionality). *See also Sharp*, 63 Wis. 2d at 261. *Public Intervenor*, 115 Wis. 2d at 36–37, expressly stated that the attorney general's duty is to defend, not challenge the state statutes' constitutionality.

¶ 35. Furthermore, the attorney general has recognized that he has a statutory duty to defend the state

statutes' constitutionality. 80 Op. Att'y Gen. 124, 128 (1991). This court has similarly acknowledged the attorney general's duty to defend the state statutes. In *O'Connell v. Board of Educ., Jt. Dist. # 10*, 82 Wis. 2d 728, 733, 264 N.W.2d 561 (1978), we stated that Wis. Stat. § 806.04(11) "recognizes that it is the duty of the attorney general to appear on behalf of the people of this state to show why [a] statute is constitutional." *See also Public Intervenor*, 115 Wis. 2d at 37, *Chicago & N. W. R. Co. v. La Follette*, 27 Wis. 2d 505, 523, 135 N.W.2d 269 (1965); *White House Milk Co. v. Thomson*, 275 Wis. 243, 247, 81 N.W.2d 725 (1957). We therefore agree with Oak Creek's argument that because the attorney general must defend the constitutionality of the statutes, any challenge to the statutes on his part would conflict with his duty to defend, unless specifically authorized by statute. (Resp. Br. at 13.)

¶ 36. Finally, the attorney general attempts to find statutory authority to challenge the constitutionality of Wis. Stat. § 30.056, by claiming that if he has "specific statutory authority to sue," he can attack the constitutionality of the statute in that suit. (Pet. Br. at 20.) We find this argument unpersuasive. The attorney general appears to argue that Wis. Stat. §§ 30.294, 823.01, and 832.02[17] provide the necessary statutory authority to abate a public nuisance under Wis. Stat. § 30.056. However, those statutes do not provide specific authority to sue in this case because § 30.056

---

[17] The attorney general's brief appears to differ from the record as to the statutory provisions under which the attorney general brought this action. The attorney general claims that he brought the action pursuant to Wis. Stat. §§ 30.294 and 821.01-.02 (Pet. Br. at 11), but the complaint actually refers to the statutory provisions stated above. (R. at 1:3.)

expressly negates the effect of § 30.294.[18] Therefore, none of the statutory sections the attorney general cites give him the specific authority to challenge § 30.056.

## IV.

¶ 37. The attorney general additionally argues the he has the authority to challenge the constitutionality of Wis. Stat. § 30.056 without further statutory authority under other constitutional and common law principles. The attorney general claims that several doctrines give him this power: the great public concern doctrine, the state as polity doctrine, and the core function doctrine. These doctrines are more fully defined later in this opinion. For the reasons that are discussed

---

[18] The dissent asserts in ¶¶ 67–78 that the attorney general has the statutory authority to bring a public nuisance claim and can argue the unconstitutionality of Wis. Stat. § 30.056 as part of that claim. We agree that the attorney general has the statutory authority to bring a claim for public nuisance under Wis. Stat. §§ 30.294, 823.01, and 823.02, but he cannot bring a claim that depends on § 30.056 for its validity. All that the nuisance statutes permit him to bring is a nuisance claim, not an attack on a statute's constitutionality. The attorney general attempted to bury his claim of unconstitutionality within his statutory public nuisance claim. (R. at 9.) Simply attempting to combine those two claims does not mean that the attorney general has statutory authority under § 30.294 to bring the unconstitutionality claim. The claims are separate, and therefore he needs different statutory authority to bring both claims. *See Public Intervenor v. DNR*, 115 Wis. 2d 28, 35, 339 N.W.2d 324 (1983) (stating that the public intervenor's enabling legislation only permits him or her to intervene in proceedings, not to challenge a rule's constitutionality).

hereinafter, we reject the attorney general's use of these doctrines in this case.[19]

■■

¶ 38. The attorney general first argues that according to the great public concern doctrine, he can challenge the constitutionality of a statute. The great public concern doctrine is an exception to the general rule that "state agencies or public officers cannot question the constitutionality of a statute unless it is their official duty to do so, or they will be personally affected if they fail to do so and the statute is held invalid." *Fulton Found. v. Dep't of Taxation*, 13 Wis. 2d 1, 11, 108 N.W.2d 312 (1961).[20] "[N]o one can question in the courts the constitutionality of a statute already enacted except one whose rights are impaired. . . . This rule extends to public officers whose private rights are not involved." *Id.* at 11–12. However, when an issue is of great public concern, a state agency can challenge a statute's constitutionality. *Id.* at 13. This court appeared to define an issue of great public concern as a "matter of great public interest." *Id.*

---

[19] At ¶ 94, the dissent discusses these doctrines being "read separately and read together" in order to find for the attorney general. We suggest that these three doctrines are no more persuasive for the attorney general in this case when "read together" than when they are analyzed separately.

[20] In the *Fulton* case, this court noted in a footnote that it was not deciding the question of the attorney general's right to raise an issue concerning the constitutionality of a state statute. *Fulton Found. v. Dep't of Taxation*, 13 Wis. 2d 1, 13 n.3, 108 N.W.2d 312 (1961) (stating that "[w]e have no issue present in the instant case of the attorney general's right to question the constitutionality of a state statute. This is because the attorney general is not a party in the instant case and only appears as counsel for the department.")

¶ 39. The attorney general argues that the great public concern exception applies in this case because he is a state officer. In support of that argument, the attorney general notes that *Fulton* did not expressly limit the exception to state agencies. *Fulton*, 13 Wis. 2d at 13.

¶ 40. The attorney general's argument lacks merit for several reasons. First, it is not the attorney general's official duty to challenge the constitutionality of Wis. Stat. § 30.056. While *Fulton* did not expressly reject the use of the exception in cases concerning the attorney general, this common-law doctrine cannot supersede the requirement of art. VI, § 3, under which the attorney general must have statutory authority to attack a statute's constitutionality. The constitution places limits on the attorney general's actions that are not placed on state agencies, or even on other public officers. The attorney general also will not be personally affected if he does not challenge the statute's constitutionality.

¶ 41. Moreover, the great public concern exception does not apply "to suits between two creatures of the state." *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 240, 332 N.W.2d 782 (1983)(citing *Kenosha v. State*, 35 Wis. 2d 317, 331, 151 N.W.2d 36 (1967)). In *Columbia County v. Board of Trustees of the Wisconsin Retirement Fund*, 17 Wis. 2d 310, 318, 116 N.W.2d 142 (1962), we declined to extend the exception to "suits between two agencies of the state government or between an arm of the government and the state itself."[21] *See also City of Eau Claire v. DNR*, 60 Wis. 2d

[21] *See also Employe Trust Funds Board, et al. v. Lightbourn, et al.*, Case No. 99–3297, Order dated of even date (properly applying *Columbia County* to deny the Employe Trust Funds

751, 752, 210 N.W.2d 771 (1973)(per curiam)(stating that the exception does not apply between a state agency and a municipality). Because the attorney general's office and Oak Creek are both "creatures of the state," the great public concern exception does not apply.

¶ 42. It is true that the attorney general can petition to invoke this court's original jurisdiction without the governor or the legislature's authorization, but even so, it is this court's prerogative to accept or deny such a petition.[22] However, the attorney general did not petition this court to invoke its original jurisdiction in this case.

¶ 43. The attorney general next argues that he has authority to attack Wis. Stat. § 30.056's constitutionality under the "state as polity" doctrine. He cites *State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 553, 126 N.W.2d 551 (1964), and *State ex rel. Attorney Gen. v. Cunningham*, 81 Wis. 440, 500–01 (1892),

Board standing to commence a suit against the Department of Administration, challenging the constitutionality of recent legislation concerning public employee pensions).

[22] We emphasize that this court accepts original jurisdiction actions only in rare instances. The specific and limited circumstances in which this court will accept original jurisdiction are detailed in the Supreme Court Internal Operating Procedures II(B)(3)(citing to *Petition of Heil*, 230 Wis. 428 (1939)). Wis. S. Ct. IOP II(B)(3)(May 24, 1984). *See also* Christenson, who states:

> The Supreme Court exercises original jurisdiction through the traditional writs such as mandamus and prohibition, the exercise of its superintending powers over inferior courts, and in certain other cases of great public moment and urgency. If the Attorney General can invoke the jurisdiction of the Supreme Court through one of these means, he may himself initiate litigation.

Christenson, 1970 Wis. L. Rev. at 303.

claiming that those cases stand for the proposition that "the public injury that results from. . .unconstitutional legislation can only adequately be redressed by the attorney general." (Pet. Br. at 16.) The attorney general appears to define "state as a polity" as a public injury, as opposed to an individual injury.[23] (Pet. Br. at 16.) He cites *The Attorney Gen. v. The City of Eau Claire*, 37 Wis. 400, 447 (1875), in support of his argument that a violation of the public trust is "a violation of the duty assumed by the state, in its aggregate and sovereign character." The attorney general argues that a violation of the public trust is therefore a violation to the state as polity because it constitutes a public injury. (Pet. Br. at 16.) It is difficult to separate this claim from the attorney general's argument involving the great public concern doctrine.

¶ 44. The attorney general's argument is only partially correct. The attorney general may in certain instances bring suit against a perceived violation of the public trust. *City of Eau Claire*, 37 Wis. at 447. However, the attorney general does not have the authority to bring suit every time a public injury occurs. If the attorney general lacks specific statutory authority, he must meet one of two additional conditions to act. He may act if the governor or legislature directs him to do so. Wisconsin Stat. § 165.25(1) permits the attorney general to bring suit in "any cause or matter. . .if [he is] requested by the governor or either house of the legislature." It appears to be an anomaly, but he may also act if the case results in the granting of a petition for origi-

___

[23] Black's Dictionary defines "polity" as "[t]he total governmental organization as based on its goals and policies." Black's Law Dictionary 1179 (7th ed. 1999).

nal jurisdiction. *State ex. rel. Haven v. Sayle*, 168 Wis. 159, 163, 169 N.W. 310 (1918).[24]

¶ 45. In all of the cases the attorney general cites, at least one of these additional conditions was met. *Zimmerman* was an original jurisdiction action, in which special counsel for the governor challenged the constitutionality of a state reapportionment plan. 22 Wis. 2d at 552. This court recognized that either the governor or the attorney general could challenge the constitutionality of a state reapportionment plan. *Id.* at 552–53. *Cunningham* was also a case involving a reapportionment of state senate and assembly districts.

¶ 46. In *Cunningham*, the court quoted with approval from *City of Eau Claire* in explaining why granting a petition for original jurisdiction was important in cases where the subject matter was of public right—*publici juris*:

---

[24] Specifically, this court stated in *State ex. rel. Haven v. Sayle*, that

> [w]ere the case within the original jurisdiction of the supreme court, *i.e.* were state officers charged with violation of law, and were the attorney general filing an information in equity in this court to restrain such act, the suit might be entertained simply by obtaining leave of court, but this results from the grant of prerogative jurisdiction to this court by the constitution, as explained in the case of *Att'y Gen. v. Railroad Cos.* 35 Wis. 425. See, also, *Income Tax Cases,* 148 Wis. 456, 134 N.W. 673, 135 N.W. 164.

168 Wis. 159, 163–64, 169 N.W. 310 (1918). We recognize that arguably, the attorney general has statutory authority to petition this court for original jurisdiction in a matter. *See* Wis. Stat. § 165.25(1). However, we caution that his authority to petition for original jurisdiction does not mean that this court will automatically accept original jurisdiction in any case.

To warrant the assertion of original jurisdiction here, the interest of the state should be primary and proximate, not indirect or remote; peculiar, perhaps, to some subdivisions of the state, but affecting the state at large in some of its prerogatives; raising a contingency requiring the interposition of this court to preserve the prerogatives and franchises of the state in its sovereign character, this court judging of the contingency in each case for itself.

*Cunningham*, 81 Wis. at 473 (quoting *Eau Claire*, 37 Wis. at 444). As explained in paragraph 42, *City of Eau Claire* and *Cunningham* were both cases in which the anomaly is demonstrated, since this court accepted original jurisdiction and, therefore, permitted the attorney general to attack the constitutionality of legislative action.

¶ 47. The case before us now was not commenced in this court on a petition for original jurisdiction, and the attorney general did not bring this action at the request of the governor or the legislature. Therefore, the attorney general's "state as a polity" argument must fail.

¶ 48. Finally, the attorney general argues that he is able to bring suit in this case because doing so is one of his core functions as attorney general. He claims that his core function is to "enforce the law and uphold the constitution." (Pet. Br. at 17.) Two statutes, he asserts, evince the legislature's recognition of his authority to uphold the constitution. First, under Wis. Stat. § 806.04(11), the attorney general must be served when a claim is made that a statute is unconstitutional. Second, under Wis. Stat. § 14.11(2)(a)4, the attorney general may use "his opinion as to the validity of any law" in deciding which side to take in a case. (Pet. Br. at 18.) The attorney general also points to

Arizona case law, which permits the Arizona attorney general to attack an Arizona statute's constitutionality in attempting to defend the state constitution. *Fund Manager v. Corbin*, 778 P.2d 1244, 1250 (Ariz. App. 1988). The attorney general appears to reason that he may attack the constitutionality of Wis. Stat. § 30.056 in attempting to defend the public trust doctrine, which emanates from Wis. Const. art. IV, § 1.

¶ 49. The attorney general must cite to another state's case law to support his core function theory because no Wisconsin case supports it.[25] Instead, as

---

[25] In note four of his brief, the petitioner attempts to set forth a number of Wisconsin cases in which "attorneys general have challenged the constitutionality of legislative acts." (Pet. Br. at 19, n.4.) These cases can all be differentiated because in each instance, a legally prescribed condition was met. The governor, legislature, state agencies and departments, or public officers requested the attorney general to challenge the constitutionality of a statute according to Wis. Stat. § 165.25(1), or it was an original action, or it was a *quo warranto* action. *Quo warranto* is a proceeding that the attorney general was first authorized to bring by the statutes enacted in 1849. He continues to have such statutory authorization in the present statutes. *See* Wis. Stat. § 784.04(1). In the following actions the attorney general was requested by a state department or a public officer to bring suit: *Martinez v. DILHR*, 165 Wis. 2d 687, 478 N.W.2d 582 (1992)(on behalf of the Department of Industry, Labor, and Human Relations—DILHR); *Fulton Found. v. Dep't of Taxation*; 13 Wis. 2d 1, 108 N.W.2d 312 (1961)(on behalf of the Department of Taxation); *State ex rel. Jones v. Froehlich*, 115 Wis. 32, 91 N.W. 115 (1902)(on behalf of the Secretary of State, a public official). The following cases were original actions: *Thompson v. Craney*, 199 Wis. 2d 674, 546 N.W.2d 123 (1996); *State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 126 N.W.2d 551 (1964); *State ex rel. Larson v. Giessel*, 266 Wis. 547, 64 N.W.2d 421 (1954); *State ex rel. Martin v. Zimmerman*,

stated in Part III of this opinion, in Wisconsin, any authority the attorney general has is found in the statutes. There is no "core function" derived from the constitution that is superior to the attorney general's statutorily-provided powers because the constitution provides that the attorney general's "core functions" are to be defined by the statutes. The attorney general's constitutional powers are equivalent to his statutory powers—they are one and the same. That is precisely why the history of art. VI, § 3 is so important: it demonstrates conclusively that the framers intended the attorney general *not* to have any core function except as defined in the statutes.

¶ 50. Moreover, this court has already rejected the attorney general's core function argument. As noted earlier, this court previously stated that "[t]he attorney general is devoid of the *inherent power* to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens. . . ." *Sharp*, 63 Wis. 2d at 261 (emphasis added). *Sharp*'s language referring to "inherent power" is the same as the attorney general's "core function" terminology. *Public Intervenor* likewise addressed this issue and found that the attorney general cannot attack a statute's constitutionality in attempting to uphold the

249 Wis. 101, 23 N.W.2d 610 (1946); *State ex rel. Raymer v. Cunningham*, 82 Wis. 39, 51 N.W. 1133 (1892); *State ex rel. Attorney Gen. v. Cunningham*, 81 Wis. 440, 51 N.W. 724 (1892); *Attorney Gen. v. City of Eau Claire*, 37 Wis. 400 (1875). The following cases were *quo warranto* actions: *State ex rel. Hicks v. Stevens*, 112 Wis. 170, 88 N.W. 48 (1901); *State ex rel. Brayton and another v. Merriman*, 6 Wis. 17 (1857); *Attorney Gen. v. McDonald*, 3 Wis. 703 (1854).

public trust doctrine. 115 Wis. 2d at 38–40. *Public Intervenor* explained that

> [t]he public intervenor is not the state, but is an office created by the legislature with stated and limited authority to intervene in proceedings. He does not have authority to bring direct court actions challenging the constitutionality of rules adopted by the DNR, an agency created also by the legislature.

*Id.* at 38. In the same manner, the position of attorney general and the authority of the state are not synonymous—the attorney general's office is a constitutional office with authority defined and limited by the legislature. While the state, or any person suing in the name of the state, may use the public trust doctrine to attempt to establish standing, *id.* (citing *State v. Deetz*, 66 Wis. 2d 1, 13, 224 N.W.2d 407 (1974)), the attorney general may not use the doctrine in this case because the attorney general is not the state, as was explained in *Public Intervenor*, and because he lacks statutory authority to sue in this case. Moreover, we reiterate *Public Intervenor*'s point that the DNR is dominant to the attorney general in protecting state waters, and as such, it is the DNR's duty to protect Crawfish Creek. *Id.* at 38–39 (citing *Wis. Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 527–28, 271 N.W.2d 69 (1978)).

¶ 51. We also note that the attorney general's reliance on Wis. Stat. §§ 14.11(2)(a)4 and 806.04(11) is misguided. The former statute permits the governor to employ special counsel "[t]o institute and prosecute an action or proceeding which the attorney general, by reason of the attorney general's opinion as to the validity of any law, or for any other reason, deems it the duty of the attorney general to defend rather than prosecute." Wis. Stat. § 14.11(2)(a)4. This provision does not

apply to the present case because here the attorney general is attempting to prosecute, not defend in the action. Moreover, the provision deals with the employment of special counsel, which also renders it inapplicable to this case. The latter statute deals with the attorney general's ability to defend the state statutes, not his ability to defend the state constitution.

¶ 52. In sum, none of the theories that the attorney general advances supplant the necessity that he derive his authority from the statutes to bring suit in this case.

¶ 53. We hold that the attorney general lacks the necessary statutory authority to attack the constitutionality of Wis. Stat. § 30.056, and therefore, we do not address whether the statute is constitutional.

## V.

¶ 54. In this case the attorney general brought both a statutory public nuisance claim and a common law public nuisance claim. The circuit court granted summary judgment to the attorney general on the common law public nuisance claim. Because we hold that the attorney general lacks standing to attack the underlying statute's constitutionality, the presumption of the statute's constitutionality remains. *County of Kenosha v. C & S Management, Inc.*, 223 Wis. 2d 373, 383, 588 N.W.2d 236 (1998). Since the statute is presumptively constitutional, the court of appeals properly reversed the circuit court's grant of summary judgment.[26]

---

[26] Oak Creek's motion to strike portions of the attorney general's brief, filed in this court, is denied, since the matters argued therein have been considered.

## VI.

¶ 55. We conclude that the attorney general lacks standing to bring this action because the legislature has not granted him the statutory authority to attack the constitutionality of Wis. Stat. § 30.056. Our conclusion rests on a strong foundation of precedent and constitutional history.[27] We also conclude that the great public concern doctrine, the state as polity doctrine, and the core function doctrine do not give the attorney general such authority. We accordingly affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 56. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I dissent from the majority

---

[27] It does not rest on a "rickety and unsteady" basis, as alleged in the dissent. Nor does it lead to "an absurd result," as claimed in the concurrence in *Employe Trust Funds Board, et al. v. Lightbourn, et al.*, Case No. 99–3297, Order dated of even date. With this decision, we continue to recognize the pre-eminence of precedent. For, as we have stated earlier:

> Fidelity to precedent, the doctrine of *stare decisis* 'stand by things decided', is fundamental to 'a society governed by the rule of law.' *Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 420 (1983). When legal standards 'are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' *Appeal of Concerned Corporators of Portsmouth Savings Bank*, 129 N.H. 183, 227, 525 A.2d 671 (1987) (Souter, J. dissenting, quoting *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 786–87 (1986), White, J. dissenting).

*State v. Stevens*, 181 Wis. 2d 410, 441–42, 511 N.W.2d 591 (1994)(Abrahamson, J., concurring) (overruled on other grounds, *Richards v. Wisconsin*, 520 U.S. 385 (1997)).

opinion's holding that the Attorney General lacks standing to bring this action.

¶ 57. The lengthy majority opinion gives many reasons, none persuasive, for reaching the wrong result. I shall limit my dissent to six points.

¶ 58. I. A major reason the majority opinion reaches the wrong result is that it begs the question presented in the case. Specifically, the majority asks whether the Attorney General has specific statutory authority to challenge the constitutionality of Wis. Stat. § 30.056. But the question properly presented by this case is whether the Attorney General has statutory authorization to bring the action to abate this alleged public and common law nuisance. I conclude the Attorney General clearly has statutory authority to bring this action and therefore he may challenge the constitutionality of Wis. Stat. § 30.056 as one of the arguments to support the litigation. See ¶¶ 64–78 below.

¶ 59. II. In answering the questions it poses, the majority opinion errs in implying that regardless of the Attorney General's statutory powers to initiate an action the Attorney General must also have specific statutory authority to challenge the constitutionality of Wis. Stat. § 30.056. See ¶¶ 79–83 below.

¶ 60. III. In reaching beyond this case to limit the powers of the Attorney General, the majority opinion rests on a 1908 case (and its progeny). Wisconsin state constitutional law scholars characterize the 1908 case and its progeny as "dubious." See ¶¶ 84–85 below.

¶ 61. IV. The majority opinion's simple recitation of state constitutional history to support its decision makes the history simpler than it really is. The omitted part of the story supports the position that

the Attorney General has common law powers. See ¶¶ 86–93 below.

¶ 62. V. Three important doctrines—the great public concern doctrine, the Attorney General's power to bring an original action in the court challenging the constitutionality of a statute, and the public trust doctrine—read together, support the position that the Attorney General has standing to bring the action in the present case. See ¶¶ 94–113 below.

¶ 63. VI. The majority opinion offers no compelling justification for reading the Attorney General's powers in such a restrictive manner. See ¶¶ 114–118 below.

I

¶ 64. The majority opinion fails to ask and answer the determinative question presented in this case. The majority asks does the Attorney General have statutory authority to attack the constitutionality of § 30.056. Majority op. ¶¶ 1 and 55. The majority opinion correctly answers this question in the negative. I agree with the majority opinion that no statute expressly authorizes the Attorney General to attack the constitutionality of Wis. Stat. § 30.056 (1995–96).

¶ 65. The majority opinion also implicitly asks, does the Attorney General have authority to attack the constitutionality of a statute in a lawsuit that the Attorney General has statutory authority to bring? The majority opinion correctly suggests that this question should be answered in the affirmative. Majority op. ¶¶ 42, 44–46, 49 and n.25.[1] I agree with the majority

---

[1] In n.25 the majority opinion apparently accepts that the Attorney General has the power to challenge the constitutionality of statutes in quo warranto actions because Wis. Stat. § 784.04(1) authorizes the Attorney General to bring quo war-

opinion that when a statute expressly authorizes the Attorney General to bring a lawsuit, the Attorney General may attack the constitutionality of a statute in pursuing that lawsuit. The majority opinion, however, also implies that the Attorney General needs express statutory authority to challenge the constitutionality of a particular statute.[2]

¶ 66. The majority opinion fails to ask and answer the question posed by the present case: Does any statute expressly authorize the Attorney General to bring the present lawsuit? I answer this question in the affirmative. Wis. Stat. §§ 30.924 and 823.01–.02 (1995–96)[3] expressly provide a statutory basis for the Attorney General's power to initiate this lawsuit to enjoin a statutory and common law public nuisance.

¶ 67. In 1996 the Attorney General initiated this lawsuit in circuit court to enjoin a public nuisance (whether a statutory or a common law nuisance) created by the City of Oak Creek in Crawfish (a.k.a. Crayfish) Creek. As the majority opinion correctly

---

ranto. Similarly, the majority opinion accepts the Attorney General's power to challenge the constitutionality of statutes at the behest of the legislature or governor because of Wis. Stat. § 165.25(1), which states that the Attorney General, "if requested by the governor or either house of the legislature, appear for and represent the state. . .[in any matter] in which the state or people of the state may be interested."

The majority opinion also recognizes that the Attorney General may attack the constitutionality of a statute in an original action in this court despite no statute authorizing the Attorney General to bring the original action. I will address this issue in Part V, ¶¶ 94–113 below.

[2] I will discuss this aspect of the majority opinion in Part II, ¶¶ 79–83 below.

[3] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise stated.

acknowledges, this case is about the Attorney General's action to abate a public nuisance. Majority op. ¶ 1. The challenge to the constitutionality of Wis. Stat. § 30.056 is part of the underlying litigation brought against Oak Creek to enjoin the public nuisance.

¶ 68. The Attorney General sought injunctive relief under Wis. Stat. §§ 30.294 and 823.01–.02 to require the City of Oak Creek to remove a concrete channel from Crawfish Creek, claiming that the concrete was a public nuisance. Majority op. ¶ 1. These statutes by their express language authorize the Attorney General to seek injunctive relief against what the Attorney General alleges is a public nuisance.

¶ 69. Section 30.294 governing chapter 30 statutory public nuisances provides that "[e]very violation of this chapter [30] is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by any person."

¶ 70. Section 823.01, governing common law nuisances, expressly authorizes any person to bring an action to enjoin a public nuisance.[4] The parties do not dispute that the Attorney General qualifies as "any person" under these statutes. Furthermore § 823.02 specifically authorizes the Attorney General to bring an action to enjoin a public nuisance.[5]

---

[4] Wis. Stat. § 823.01 provides that "any person. . .may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered. . . ."

[5] Wis. Stat. § 823.02 provides that "an action to enjoin a public nuisance may be commenced and prosecuted in the name of the state, either by the attorney general on information obtained by the department of justice, or upon relation of a private individual. . . ."

651

¶ 71. The majority opinion dismisses the Attorney General's claim to these express statutory powers to initiate this action to enjoin a public nuisance in one conclusory sentence. The majority opinion states that "those statutes do not provide specific authority to sue in this case because § 30.056 expressly negates the effect of § 30.294." Majority op. ¶ 36.

¶ 72. This sentence begs the question raised in this case. The question in the present case is whether Wis. Stat. § 30.294 or §§ 823.01–.02 authorize the Attorney General to bring an injunction action against Oak Creek for what the Attorney General concludes is a public nuisance. The answer to this question is clearly yes. It is clearly yes, even though § 30.056 declares that Oak Creek cannot be required to remove any deposit it placed in Crawfish Creek before June 1, 1991.

¶ 73. Section 30.056 provides that "notwithstanding ss. 30.12,[6] 30.19,[7] 30.195[8] and 30.294," Oak

---

[6] Wis. Stat. § 30.12(1) provides, in part:

[U]nless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

[7] Wis. Stat. § 30.19(1)(a) provides:

(1) Permits required. . . .Unless a permit has been granted by the department or authorization has been granted by the legislature, it is unlawful:

(a) To construct, dredge or enlarge any artificial waterway, canal, channel, ditch, lagoon, pond, lake or similar waterway where the

Creek may not be required to remove any concrete placed in Crawfish Creek before June 1, 1991. The Attorney General's statutory power to initiate this action against Oak Creek under § 30.294 to enjoin what he thinks is a public nuisance remains in effect after the enactment of § 30.056. If § 30.056 is a constitutional enactment, a court might not grant the Attorney General the injunction he seeks.

¶ 74. Although a court may disagree with the Attorney General that Oak Creek's conduct constitutes a nuisance, the legislature has not vitiated in Wis. Stat. § 30.056 the Attorney General's express statutory authority to bring an action to enjoin what the Attorney General considers a nuisance. The legislature could have expressly stated in § 30.056 that no person may bring an action under § 30.294 against Oak Creek for its pre-1991 conduct regarding Crawfish Creek. The legislature did not enact such a law. Rather, the legislature in adopting § 30.056 eliminated one remedy available against Oak Creek, namely ordering removal of the concrete. After the adoption of § 30.056, any person may sue Oak Creek for its conduct, but § 30.056, if valid and applicable, may bar one remedy.

¶ 75. Furthermore, Wis. Stat. § 30.056 is silent about the Attorney General's powers under §§ 823.01–.02 relating to common law nuisances. The

---

purpose is ultimate connection with an existing navigable stream, lake or other navigable waters, or where any part of the artificial waterway is located within 500 feet of the ordinary high-water mark of an existing navigable stream, lake or other navigable waters.

[8] Wis. Stat. § 30.195(1) provides that "[n]o person may change the course of or straighten a navigable stream without a permit issued under this section or without otherwise being expressly authorized by statute to do so."

Attorney General alleges in this litigation that the concrete channel in Crawfish Creek constitutes a common law nuisance.

¶ 76. Section 30.056 does not refer to §§ 823.01–.02 and does not in any way address the Attorney General's power to enjoin an alleged common law nuisance under these sections. Oak Creek's defense in any injunction suit brought under these sections might be that the legislature has retroactively declared in § 30.056 that Oak Creek's conduct does not violate the listed statutory provisions in chapter 30 and is therefore not a common law public nuisance. One of the Attorney General's responses might be that § 30.056 is unconstitutional.

¶ 77. For the reasons set forth, I conclude that the Attorney General is authorized by three statutes to bring this action against Oak Creek for maintaining a public nuisance.[9] Professor Christenson, upon whom the majority opinion relies, describes the power to enjoin public nuisances as "perhaps the most important of all the Attorney General's initiative powers"

---

[9] The court of appeals and majority opinions' reliance on *Public Intervenor v. DNR*, 115 Wis. 2d 28, 35, 339 N.W.2d 324 (1983), as a limitation on the powers of the attorney general is misplaced. As noted at the outset of that opinion, the court was considering the power of a legislatively created official, not the constitutionally created office of the Attorney General. *Public Intervenor*, 115 Wis. 2d at 29. Furthermore, the public intervenor's statutory authority in that case only allowed the Public Intervenor to intervene in an existing action, not to initiate a lawsuit. *Public Intervenor*, 115 Wis. 2d at 34–35. In the case at bar Wis. Stat. §§ 30.294 and 823.01–.02 expressly give the attorney general the power to initiate actions to abate public nuisances.

and allows the Attorney General to play an important role in the protection of the environment.[10]

¶ 78. The majority opinion's cavalier dismissal in one sentence of three statutes expressly authorizing the Attorney General to bring an action regarding a public nuisance is contrary to law and logic. In holding that the Attorney General does not have standing to bring this action against a public nuisance, this court is fundamentally restricting the Attorney General's express statutory powers.

## II

¶ 79. Although I have shown above that the majority opinion acknowledges that the Attorney General has authority to attack the constitutionality of a statute in a lawsuit that the Attorney General has statutory authority to bring, majority op. ¶¶ 42, 44–46, 49 and n.25, the majority opinion also suggests the contrary position. The majority opinion states that regardless of the Attorney General's statutory powers to initiate an action, the Attorney General must also have specific statutory authority to challenge the constitutionality of Wis. Stat. § 30.056.[11]

¶ 80. The majority opinion states at ¶ 35, for example, that "because the attorney general must defend the constitutionality of the statutes, any challenge to the statutes on his part would conflict with his duty to defend, unless specifically authorized by stat-

---

[10] Arlen C. Christenson, *The State Attorney General*, 1970 Wis. L. Rev. 298, 317–18 (citing Wis. Stat. § 280.02, renumbered as § 823.02). *See also* Scott Van Alstyne and Larry J. Roberts, *The Powers of the Attorney General in Wisconsin*, 1974 Wis. L. Rev. 721, 743 (noting the power of the attorney general to abate public nuisances).

[11] Oak Creek takes this position in its brief.

ute." It further states at ¶ 36 that "none of the statutory sections the attorney general cites gives him the specific authority to challenge § 30.056." See also majority op. ¶ 40. The majority opinion cites no authority for these sentences limiting the powers of the Attorney General in conducting litigation expressly authorized by statute, and I could find none.[12] These inconsistent positions in the majority opinion are puzzling.

¶ 81. There is no statute or case law supporting the majority's position that when the Attorney General has express statutory authority to bring a cause of action he needs specific authority to challenge the constitutionality of a statute. Prohibiting the state's chief legal officer from challenging the constitutionality of a statute in the course of enforcing his statutory authority has no statutory or constitutional basis. Indeed the rule appears to be that the Attorney General has inherent discretion to act in furtherance of lawful litigation unless his action is palpably illegal.[13]

---

[12] The cases cited by the majority at ¶ 35 saying that the Attorney General has a duty to defend a statute's constitutionality do not support the conclusion that the Attorney General may not challenge the constitutionality of a statute.

[13] See State ex rel. Reynolds v. Smith, 19 Wis. 2d 577, 120 N.W.2d 664 (1963)(Attorney General has inherent discretion with respect to prosecuting litigation at the Governor's direction; Attorney General could determine propriety of incurring particular expense in absence of showing that the action was palpably illegal).

See Fund Manager v. Corbin, 778 P.2d 1244, 1250 (Ariz. App. 1988), affirmed in part and dismissed in part on other grounds, 942 P.2d 428 (Ariz. 1989), in which the court stated that although the attorney general does not have common law powers and is limited to statutory powers, there is "nothing that would disable the attorney general from attacking the constitu-

¶ 82. In numerous cases in which the Attorney General was authorized to appear, the Attorney General has challenged the constitutionality of legislative acts. *See* majority op. ¶ 49 n.25. No statute or case law prohibits the Attorney General from challenging the constitutionality of a statute in an action that he has authority to bring.

¶ 83. I agree with the Attorney General that holding that the Attorney General needs specific statutory authority to sue is significantly distinct from the majority opinion holding that when the Attorney General has express statutory authority to bring an action, he or she needs additional express statutory authority to challenge the constitutionality of a statute. The law is clear that if the Attorney General has authority to bring an action, he or she does not need express authority to challenge the constitutionality of a statute.

## III

¶ 84. In reaching beyond the facts of this case to limit the powers of the Attorney General, the majority opinion rests on a 1908 case, *State v. Electric Railway & Light Co.*, 136 Wis. 179, 116 N.W. 900 (1908). This was the first case in which the court declared that the Attorney General is without power to initiate a suit without express statutory authority. Professors Scott Van Alstyne and Larry J. Roberts, in their article entitled *The Powers of the Attorney General in Wisconsin*, 1974 Wis. L. Rev. 721, 736–37, upon which the majority

tionality of an Arizona statute in the process of exercising his specific statutory powers." This language was quoted with approval in *State ex rel. Woods v. Block*, 942 P.2d 428 (Ariz. 1997) (en banc), holding that the attorney general can raise a constitutional challenge to a statute if he has statutory authority to bring the lawsuit.

opinion relies, characterize *Electric Railway* as unpersuasive and lacking in historical analysis and in basic logic. They concluded that the case is "dubious." Van Alstyne and Roberts criticize the cases subsequent to *Electric Railway*, several of which are cited by the majority opinion, as adding nothing to the unpersuasive analysis of the original holding.[14]

¶ 85. The majority opinion's discussion of the constitutional and judicial history relating to the powers of the Attorney General unfortunately fails to acknowledge or correct the errors in our early cases. More importantly, the majority does not explain why these cases are persuasive. Stare decisis does not mean that the court should continue to adhere to unexplained and unpersuasive prior statements of this court.

## IV

¶ 86. The majority opinion's recitation of state constitutional history to support its decision makes the history simpler and clearer than it is. The omitted part of the story supports the position that the Attorney General has common law powers.

¶ 87. The majority opinion relies on Charles M. Baker's 1849 revision of the Wisconsin laws to support its interpretation that the Wisconsin constitution denies the Attorney General common law powers.

¶ 88. The majority opinion attempts to persuade the reader that "Baker relied on [New York] laws that had similarly precluded the attorney general's common law powers." Majority op. ¶ 31. Nothing in the New York laws upon which Baker relied declared that the attorney general had no common law power.

---

[14] 1974 Wis. L. Rev. at 738.

¶ 89. The majority opinion's sole authority that the New York attorney general does not have common law powers is a 1941 New York case, *People v. Dorsey*, 29 N.Y.S.2d 637, 642 (Queens County Ct. 1941), that was decided almost 100 years after Charles Baker consulted the New York statutes.

¶ 90. *Dorsey* poses two problems for the majority opinion which the opinion chooses to ignore. First, in *Dorsey* itself, a 1941 case, the New York court wrote that "[a]s to the rights, powers and authority of the Attorney General, the decisions are in conflict." *Dorsey*, 29 N.Y.S.2d at 641. The *Dorsey* court went on to explain that in some earlier cases the New York courts held that the attorney general possesses common law powers. The *Dorsey* court's ultimate conclusion was that the New York attorney general had only those powers that are granted by the constitution and legislature. *Dorsey*, 29 N.Y.S.2d at 643–44. This statement does not help the majority opinion because it comes long after Charles Baker looked to New York law about the powers of the attorney general. Apparently whether the New York attorney general had common law powers was not a settled question when Baker examined New York law.

¶ 91. Second, *Dorsey* is of limited value in this case because Dorsey is a criminal case relating to the criminal prosecution powers of the New York attorney general. *Dorsey* was concerned with the authority of the New York attorney general versus the power of the county district attorneys to conduct criminal investigations. Most New York cases that cite to *Dorsey* do so for its holding that the New York attorney general lacks the common law power to prosecute criminal

offenses.[15] This purely criminal context renders *Dorsey* of limited value in the case before this court.

¶ 92. Third, in addition to New York law, Charles Baker also relied on the laws of Missouri in drafting the 1849 Wisconsin laws regarding the Attorney General.[16] Like the Wisconsin constitution, the Missouri constitution grants to the Missouri attorney general powers "prescribed by law" (Missouri Const. art. V, § 1). However, the Missouri courts have held that its attorney general retains the powers available at common law, unless specifically excluded by the legislature. *McKittrick v. Missouri Pub. Serv. Comm.*, 175 S.W.2d 857, 861 (Mo. 1943) (en banc)(relying on a statute similar to Wis. Const. art. XIV, § 13, which retains the common law that is not inconsistent with the constitution or statutes). Van Alstyne and Roberts carefully discuss Charles Baker's work and assert that the Wisconsin cases have ignored the possibility that the statutes drafted by Baker might have incorporated the common law.[17]

¶ 93. The majority opinion's recitation of the constitutional history, although superficially persuasive,

---

[15] *See, e.g., People v. DiFalco*, 377 N.E.2d 732, 735 (NY 1978); *People v. Goldwater*, 358 N.Y.S.2d 814, 817 (Schoharie Cty. Ct. 1974); *People v. Hopkins*, 47 N.Y.S.2d 222, 225 (N.Y. Cty. 1944).

The basic scheme established by the 1849 Wisconsin legislature is like that in New York. The district attorneys are the state's trial lawyers and the Attorney General, the state's appellate lawyer. Arlen C. Christenson, *The State Attorney General*, 1970 Wis. L. Rev. 298, 301.

[16] Scott Van Alstyne and Larry J. Roberts, *The Powers of the Attorney General in Wisconsin*, 1974 Wis. L. Rev. 721, 733.

[17] Scott Van Alstyne and Larry J. Roberts, *The Powers of the Attorney General in Wisconsin*, 1974 Wis. L. Rev. 721, 736.

is an oversimplification. The history does not unambiguously support the majority's position that the Attorney General has no common law powers, as the majority opinion would have us believe.

## V

¶ 94. Three important doctrines—the great public concern doctrine, the Attorney General's power to bring an original action in the court challenging the constitutionality of a statute, and the public trust doctrine—read separately and read together, support the position that the Attorney General has standing to bring the action in the present case.

### A. The Great Public Concern Doctrine

¶ 95. The general rule is that state agencies, public officers, and municipalities have no standing to challenge the constitutionality of statutes. *Fulton Foundation v. Department of Taxation*, 13 Wis. 2d 1, 11, 108 N.W.2d 312 (1961). One exception to this rule is that these governmental entities may challenge constitutionality of a statute when the issue is of great public concern. In *Fulton Foundation* we described great public concern as a "matter of great public interest." *Fulton Foundation*, 13 Wis. 2d at 13.

¶ 96. As was made clear in *The Attorney General v. The City of Eau Claire*, 37 Wis. 400 (1875), protecting Wisconsin rivers, which is exactly what this case is about, is a matter of great public interest to the state as a whole. This case involves a navigable stream and the "forever free" and public trust doctrines, which I discuss in greater detail below. It easily falls within our prior cases determining what constitutes "great public concern."

¶ 97. The majority opinion holds that the great public concern doctrine does not apply in this case for two reasons. First, it states that "it is not the attorney general's duty to challenge the constitutionality of Wis. Stat. § 30.056." Majority op. at ¶ 40. The question is not duty in this case but authority. I previously have discussed the Attorney General's authority to challenge the constitutionality of a statute when the Attorney General has express statutory authority to initiate an action.

¶ 98. Second, the majority opinion says that the "great public concern" doctrine does not apply "to suits between two creatures of the state," majority op. ¶ 41, and the Attorney General and Oak Creek are creatures of the state. Several cases have stated that the great public concern exception applies only between a state agency or municipality and a private litigant, not between two "creatures" of the state.[18]

¶ 99. These cases fail to explain, however, how this judicially created limitation relates to the question whether an issue is of great public concern. Furthermore, the cases fail to give any compelling reason for excluding disputes between arms of the government from the great public concern doctrine.

---

[18] This limitation on the great public concern exception seems to have been first established in *Columbia Cty. v. Board of Trustees of Wis. Retirement Fund*, 17 Wis. 2d 310, 318, 116 N.W.2d 142 (1962). In that case the court merely stated, "[w]e are not disposed to extend the [great public concern] exception to the general rule between two agencies of state government. . . ." *Id.* at 318. There is no further explanation of the court's "not being disposed" in that case or the subsequent cases that rely on it. *See, e.g., City of Eau Claire v. DNR*, 60 Wis. 2d 751, 752, 210 N.W.2d 771 (1973).

¶ 100. Indeed this court has ignored its own created bar and allowed suits between arms of the government. This court has, for example, allowed a municipality to challenge the constitutionality of a collective bargaining statute in its suit against a state agency. *See Unified S.D. No. 1 of Racine Cty. v. WERC*, 81 Wis. 2d 89, 259 N.W.2d 724 (1977). The cases are thus inconsistent about the application of the rule.

¶ 101. Furthermore, several of this court's holdings, including *Fulton Foundation*, the case that first recognized the great public concern exception, have suggested that the great public concern doctrine is most needed when private citizens are not apt to bring an action.[19] In this case the Attorney General plays a critical role because no individual litigant is likely to challenge Oak Creek's conduct or § 30.056.

¶ 102. As is apparent from our own cases, the judicially created rule excluding suits between arms of government from the great public concern doctrine has no logical foundation and is not consistently applied. A doctrine that has been judicially created should be overturned when the rationale for the doctrine is not evident and the application of the doctrine has not been coherent or consistent.[20] I would overturn the judi-

---

[19] *See Fulton Foundation*, 13 Wis. 2d 1, 14b, 108 N.W.2d 312 (1961) (motion for rehearing) (noting that a further reason for allowing the department of taxation to challenge the constitutionality of a statute is that "there is little likelihood that any taxpayer will"). *See also City of Madison v. Ayers*, 85 Wis. 2d 540, 545, 271 N.W.2d 101 (1978); *S.C. Johnson & Son Inc. v. Town of Caledonia*, 206 Wis. 2d 292, 304, 557 N.W.2d 412 (Ct. App. 1996).

[20] For an informative discussion about the *Columbia County* case, 17 Wis. 2d 310, and its progeny and how these cases fail to establish any reason for excluding disputes between

cially created rule excluding suits between arms of government from the great public concern doctrine. I would allow the present suit to continue because it falls within the great public concern doctrine.

### B. The Attorney General's Original Action Jurisdiction

¶ 103. The majority opinion recognizes, as it must, that this court has for more than 125 years permitted the Attorney General to challenge the constitutionality of statutes in original actions in this court without specific statutory authority to bring the action to challenge the constitutionality of the statute. Majority op. ¶¶ 42, 45, n.22. *See also* Arlen C. Christenson, *The State Attorney General*, 1970 Wis. L. Rev. 298, 303 (noting that the question of the Attorney General's authority to bring an original action has been assumed); Jack Stark, *The Wisconsin State Constitution: A Reference Guide* (1998) at 132 (noting that the power to bring original actions is an example of this court expanding the powers of an Attorney General beyond a strict reading of the constitution).

¶ 104. Original action cases by the Attorney General challenging the constitutionality of statutes do not

state entities from the great public concern exception, *see Silver Lake Sanitary Dist. v. DNR*, 1999 WL 1125252, Dec. 9, 1999 (Ct. App.) (Vergeront, J. concurring). J. Vergeront urges this court to re-examine this limitation on the great public concern doctrine and clarify the existing case law. *Id.*

The *Columbia County* case was applied most recently in an order denying the Employe Trust Funds Board leave to commence an original action against the Department of Administration for lack of standing. *Employe Trust Funds Board, et al. v. Lightbourn*, Case No. 99–3297, Order dated of even date.

square with today's holding. The majority opinion shrugs these cases off by writing that the Attorney General's power to bring original actions "appears to be an anomaly." Majority op. ¶ 44. Anomaly means deviation. But since the majority takes the position that the Attorney General is constitutionally prohibited from bringing actions or challenging the constitutionality of statutes unless the Attorney General has specific statutory authorization to do so (¶ 35), the majority opinion's allowing a deviation from this constitution-based rule is impermissible. Simply because this court has the power to accept or decline the Attorney General's petition for an original action does not mean that the agreement of four members of this court can permit what would otherwise be an unconstitutional exercise of authority by the Attorney General.

¶ 105. I believe that the original action cases are best understood as a subset of the great public concern line of cases. A brief review of several cases will demonstrate that original actions brought by the Attorney General are allowed only if the matter is important to the state as a whole.

¶ 106. In *The Attorney General v. The City of Eau Claire*, 37 Wis. 400 (1875), the Attorney General brought an original action to challenge the constitutionality of a statute delegating authority to the city of Eau Claire to obstruct a navigable river. In that case, remarkably similar to the one at bar, the court concluded that allowing a city to dam a navigable river violated the public trust and merited the granting of original jurisdiction. 37 Wis. at 446–47. *See also Petition of Heil*, 230 Wis. 428, 440, 284 N.W. 42 (1939) (obstruction of navigable river invokes supreme court's original jurisdiction).

665

¶ 107. In *State ex rel. Attorney General v. Cunningham*, 81 Wis. 440, 51 N.W. 724 (1892), the court considered an original action brought by the Attorney General against the secretary of state challenging the constitutionality of a statute in order to enforce Wisconsin citizens' equal representation in government. "[T]he rights vindicated and protected from the prejudicial effect of an unconstitutional act of the legislature. . .were rights of sovereignty which the state in its political capacity held and was bound to guard and protect. . . ." *Cunningham*, 81 Wis. at 500–501. The court analogized the right of equal representation to the rights discussed in *City of Eau Claire*, the right of citizens to have the public trust doctrine enforced and protected. *Cunningham*, 81 Wis. at 500–01. In *State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 552, 126 N.W.2d 551 (1964), the court similarly stated that it "has consistently held that the state, acting either through the Governor or the Attorney General, may challenge the constitutionality of a state reapportionment plan. . . ."[21]

¶ 108. These and other cases demonstrate that the court allows an original action to proceed when the matter is publici juris (of importance for the state as a whole). But there are criteria other than publici juris for this court granting leave to bring an original action: the need for speedy resolution is one; no adequate remedy in the circuit court or disputed facts are others. *Petition of Heil*, 230 Wis. at 440–41. Thus even if a

---

[21] *See also State ex rel. Martin v. Zimmerman*, 249 Wis. 101, 111, 23 N.W.2d 610 (1946) (noting that because the issue affected the state in a sovereign capacity the court would have granted original jurisdiction and allowed the Attorney General to proceed if the underlying cause of action would have been valid).

matter is publici juris this court might not grant original jurisdiction if, for example, facts are in dispute. According to the majority decision, then, if the court would have granted the Attorney General leave to bring an original action in this case then the Attorney General might challenge the constitutionality of § 30.056. See majority op. ¶ 42, n.22. But since the facts are in dispute, as Oak Creek claims in this case, we would not take the original action and the majority opinion would bar the Attorney General from bringing the publici juris lawsuit in circuit court. If this court would refuse original jurisdiction and remand the case to the circuit court, the Attorney General would have express statutory power to appear. *See* Wis. Stat. § 165.25(1). If this court merely dismisses the petition for original action, under the majority opinion the Attorney General could not bring the suit. This jurisprudence makes no sense. Judicially created law should make sense. If it doesn't, the court should try again.

¶ 109. This court's continuing recognition of the power of the Attorney General for the past 125 years, cases preceding the 1908 *Electric Railway* case, 137 Wis. 179, see ¶¶ 84–85 above, cannot be squared with today's holding. These original action cases are not anomalies; they are sound precedent that this court should follow and hold that the Attorney General has standing to bring this action.

### C. Public Trust Doctrine

¶ 110. The third doctrine of importance here is the state public trust doctrine. This doctrine recognizes that the state holds beds underlying navigable waters in trust for all Wisconsin citizens. *Muench v. Public*

*Serv. Comm'n,* 261 Wis. 492, 501–02, 53 N.W.2d 514 (1952).

¶ 111. Although the legislature has the primary authority to administer the public trust, the public trust doctrine allows a person, including the Attorney General, to sue on behalf of, and in the name of, the State " 'for the purpose of vindicating the public trust.' " *Gillen v. City of Neenah,* 219 Wis. 2d 806, 822, 580 N.W.2d 628 (1998) (quoting *State v. Deetz,* 66 Wis. 2d 1, 13, 224 N.W.2d 407 (1974)). The importance of the public trust doctrine and the state's role in enforcing that doctrine have been emphasized for over 100 years.[22]

¶ 112. The public trust doctrine is clearly implicated in this case. The Attorney General claims that Oak Creek's concrete channel creates a public nuisance and that in trying to legalize that nuisance the legislature has violated the "forever free" clause of art. IX, § 1, of the Wisconsin Constitution and the public trust doctrine.[23] Whether the legislature has abdicated the

---

[22] *See, e.g., Wisconsin's Environmental Decade v. Department of Natural Resources,* 85 Wis. 2d 518, 526, 271 N.W.2d 69 (1978) ("[t]he state's responsibility in the area [of protecting navigable waters] has long been acknowledged"); *Muench v. Public Serv. Comm'n,* 261 Wis. 492, 513, 53 N.W.2d 514 (1952) (when navigable waters may be damaged by the erection of a dam "it is clearly the duty of the state to appear in behalf of the public in the proceedings"); *City of Eau Claire,* 37 Wis. at 447 ("[public rivers] are the charge of the state, and the state cannot abdicate its charge of them").

[23] Wis. Const., art. IX, § 1 provides:

> Jurisdiction on rivers and lakes; navigable waters. The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and

public trust in the navigable waters of the state is, without question, an issue of great public concern.

¶ 113. The state's constitutional history and our cases setting forth the three doctrines I have discussed support the proposition that the Attorney General has standing to bring this action.[24]

## VI

¶ 114. Finally, the majority provides no compelling justification for reading the Attorney General's powers in such a restrictive manner. The majority offers two rationales to explain why the Attorney General lacks standing to bring this action. Both are weak and unpersuasive.

¶ 115. First, the majority argues that it is the duty of the Attorney General to defend the constitutionality of statutes. Majority op. at ¶ 35 (citing cases). The majority opinion refers to Wis. Stat. § 806.04(11) as setting forth this duty. That statute says nothing of the kind. It merely requires that the Attorney General be given notice when the constitutionality of a statute

---

the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well as to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.

[24] Professor Christenson, upon whose article the majority opinion relies, concludes that the power delegated by the legislature to the Attorney General to initiate litigation in a broad range of cases to protect the public interest gives him the ability to "initiate litigation in almost any civil case in which his English predecessors or his counterparts in other states possessed of inherent authority or 'common law powers' may act." Arlen C. Christenson, *The State Attorney General*, 1970 Wis. L. Rev. 298, 320–21.

is challenged and allows the Attorney General to be heard on the issue.

¶ 116. There is no requirement, in the statutes or otherwise, that the Attorney General defend the constitutionality of all statutes. Indeed, such a duty would be completely at odds with original action cases in which the Attorney General has attacked the constitutionality of statutes.[25] A duty to defend the constitutionality of all statutes contravenes the Attorney General's oath of office, the same oath judges take, to defend the Wisconsin Constitution. Defending the constitution includes a duty to assert the unconstitutionality of legislative or executive acts.[26] The authority to challenge the constitutionality of a statute is properly located in the constitutionally created state law enforcement officer elected directly by the citizens.

¶ 117. The majority's second rationale for restricting the powers of the Attorney General is that the Department of Natural Resources is dominant to the Attorney General in protecting state waters and it is therefore the Department's duty to protect Crawfish Creek. See majority op. at ¶ 50 (citing *Public Inter-*

---

[25] *See, e.g., City of Eau Claire*, 37 Wis. 440 (1875); *State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 126 N.W.2d 551 (1964). *See also* Jack Stark, *The Wisconsin State Constitution: A Reference Guide*, at 132 ("occasionally an attorney general has declined to defend a statute he or she thinks is unconstitutional.")

*See also* Wis. Stat. § 14.11(2)(a)4, which provides that the Governor may employ special counsel. This statute apparently anticipates that the Attorney General may take positions opposite the Governor about the constitutionality of a statute.

[26] *State v. Chastain*, 871 S.W.2d 661, 663 (Tenn. 1994) (concluding that most states recognize that the attorney general has "not only the authority, but the duty. . .to seek to have certain legislation declared unconstitutional").

*venor v. DNR*, 115 Wis. 2d 28, 38–39, 339 N.W.2d 324 (1983)). This very argument, that it is the sole province of the DNR to decide when a public trust violation has occurred and how it should be addressed, was handily rejected by this court in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 831–32, 580 N.W.2d 628 (1998). In that case we declined to adopt such an interpretation of Wis. Stat. § 30.294, noting that the legislature authorized any person to abate public nuisances years before the DNR was even created and retained this statute after it created the DNR. *Gillen*, 219 Wis. 2d at 832.

¶ 118. Both of the rationales offered by the majority opinion to justify its result do not pass muster. Essentially, the majority opinion has strung together statements taken out of context from various cases. A careful reading of the opinion and the materials on which it relies demonstrates that the decision rests on rickety and unsteady foundations.

* * *

¶ 119. More than 25 years ago Van Alstyne and Roberts suggested in their article that this court reexamine the judicial limitation it has placed on the Wisconsin Attorney General's powers.[27] The majority opinion is the latest in a series of questionable cases relating to the powers of the Attorney General. The result is that Wisconsin's jurisprudence about the power of the Attorney General is unduly restrictive and intellectually confusing and inconsistent. Our task is to clarify the confusion, not continue the confusion. We have failed in this case. I therefore dissent.

[27] 1974 Wis. L. Rev. at 721–722.

¶ 120. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this dissent.