2018 WI 82

# SUPREME COURT OF WISCONSIN

NOTICE

**This order is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2278-OA

**Kristi Koschkee, Amy Rosno, Christopher Martinson and Mary Carney,**

       **Petitioners,**

    **v.**

**Tony Evers; in his official capacity as Wisconsin Superintendent of Public Instruction and Wisconsin Department of Public Instruction,**

       **Respondents.**

**FILED**

**JUN 27, 2018**

Sheila T. Reiff
Clerk of Supreme Court
Madison, WI

The Court entered the following order on this date:

JUNE 27, 2018

¶1 This original action is before the court for the determination of preliminary motions related to two issues: (1) whether the respondents in this action, Superintendent of Public Instruction Tony Evers and the Department of Public Instruction, are entitled to counsel of their choice or whether they must be represented by the Department of Justice; and (2) whether Governor Scott Walker is a necessary party to this action.

¶2 We conclude that Evers and the Department of Public Instruction are entitled to counsel of their choice and are not

required to be represented by the Department of Justice. Further, we conclude that the governor is not a necessary party to this action. Accordingly, we grant Evers' and the Department of Public Instruction's motion to deny substitution of counsel and to disqualify the attorney general from appearing on behalf of respondents and deny the Department of Justice's cross-motion to strike the appearance by attorneys Ryan Nilsestuen and Benjamin R. Jones. We further decline to order that the governor be joined as a necessary party.

I

¶3 In this original action, petitioners seek a declaratory judgment that Superintendent of Public Instruction Tony Evers (Evers) and the Department of Public Instruction (DPI) must comply with the REINS Act, 2017 Wis. Act 57. Generally, the REINS Act requires an agency proposing an administrative rule to submit the proposed rule to the "department of administration, which shall make a determination as to whether the agency has the explicit authority to promulgate the rule as proposed in the statement of scope and shall report the statement of scope and its determination to the governor who, in his or her discretion, may approve or reject the statement of scope." 2017 Wis. Act 57, § 3; Wis. Stat. § 227.135(2).

¶4 The record reflects that, upon the filing of the original action petition, a dispute arose between DPI and the Department of Justice (DOJ) regarding which entity would provide representation for Evers and DPI in this case. On the same day

2

the original action petition was filed, DPI's in-house counsel initiated correspondence with DOJ regarding representation. DOJ indicated that it was of the position that the REINS Act applies to Evers and DPI. This position is contrary to that taken by Evers and DPI.

¶5 DPI in-house attorneys filed a notice of appearance with the court, and notified DOJ that they would not be referring this matter to DOJ for representation. DOJ responded by filing its own notice of appearance and substitution of counsel. Further, DOJ informed DPI attorneys that the governor had requested that DOJ take over representation of Evers and DPI. By letter, Evers notified the attorney general that he was terminating DOJ's representation.

¶6 Evers and DPI filed a motion to deny substitution of counsel and to disqualify the attorney general from appearing on their behalf. In response, DOJ filed a cross-motion to strike the appearance by DPI's in-house counsel, Ryan Nilsestuen and Benjamin R. Jones. We address both of these motions in this order. Additionally, the court sua sponte raised the issue of whether the governor is a necessary party to this action and we also address that issue.

II

¶7 We address first who will represent Evers and DPI in this action. Specifically, we examine whether Evers and DPI should be represented by counsel of their choice or by DOJ. Evers and DPI assert that they are entitled to be represented by their own counsel. Conversely, DOJ argues that it is to take

3

over the representation of Evers and DPI and to determine Evers and DPI's litigation position.

¶8 This court is vested with authority by the Wisconsin Constitution.[1] Specifically, this court has "superintending and

---

[1] The dissent fails to acknowledge the focus of our discussion. This order does not address the constitutional authority of the superintendent of public instruction. Rather, it addresses the authority of the Wisconsin Supreme Court. Unlike the dissent, we save for another day the substantive issues addressing the constitutional authority of the superintendent of public instruction.

This court possesses inherent power, which includes the court's superintending authority. Our inherent power includes "all judicial powers essential to carry out the judicial functions delegated to [us]." In re Kading, 70 Wis. 2d 508, 517, 235 N.W.2d 409 (1975). The dissent's disclaimer of our exercise of superintending authority here is inconsistent with the court's inherent power to appoint an attorney in a civil case. This power, although most often exercised to preserve the constitutional rights of indigent criminal defendants, is not limited to constitutional or statutory grace, to criminal cases, or to litigants who are indigent.

> A court's inherent power to appoint counsel is not derived from an individual litigant's constitutional right to counsel, but rather is inherent to serve the interests of the circuit court. . . . In rare cases a court may find a compelling judicial need for appointment of an attorney for a party even though that party may have neither a constitutional nor a statutory right to counsel. A court may use its inherent discretionary authority to appoint counsel in furtherance of the court's need for the orderly and fair presentation of a case.

(continued)

4

administrative authority over all courts." Wis. Const. art. VII, § 3. Our superintending power is "as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975). "If this power were strictly limited to the situations in which it was previously applied, it would cease to be superintending, since this word definitely contemplates ongoing, continuing supervision in response to changing needs and circumstances." Id.

¶9 "[T]he primary duty of the courts as the judicial branch of our government is the proper and efficient administration of justice." In re Integration of the Bar, 5 Wis. 2d 618, 622, 93 N.W.2d 601 (1958). Essential to such a duty is the inherent supervisory power over the practice of law. Herro, McAndrews & Porter, S.C. v. Gerhardt, 62 Wis. 2d 179, 184, 214 N.W.2d 401 (1974). "The practice of law in the broad sense, both in and out of the courts, is [] a necessary part of

---

Joni B. v. State, 202 Wis. 2d 1, 10-11, 549 N.W.2d 411 (1996) (internal citations omitted). Furthermore, "the legislature may not place an unreasonable burden on or substantially interfere with the judiciary's exercise of that power," id. at 10, and this authority is not limited, as the dissent suggests, to the appointment of amicus counsel. This is indeed an exceptional case, and one in which the superintendent and DPI's request for independent counsel furthers the court's need for the orderly and fair presentation of the case. Moreover, where, as here, we sit as the trial court in an original action, exercising our authority to appoint counsel is entirely logical; that is, we are not, as the dissent suggests, merely "supervis[ing ourselves]." See dissent, ¶42.

5

and is [] inexorably connected with the exercise of the judicial power . . . ." In re Integration of the Bar, 5 Wis. 2d at 622.

¶10 "[T]he regulation of the practice of the law is a judicial power and is vested exclusively in the supreme court" by way of Article VII of the Wisconsin Constitution. State ex rel. Reynolds v. Dinger, 14 Wis. 2d 193, 206, 109 N.W.2d 685 (1961); see State ex rel. Fiedler v. Wisconsin Senate, 155 Wis. 2d 94, 105-06, 454 N.W.2d 770 (1990). Once an attorney has been "admitted to practice law, he or she is subject to the judiciary's inherent and exclusive authority to regulate the practice of law." Fiedler, 155 Wis. 2d at 103.

¶11 This case presents a dispute regarding the representation of a client. Representation of a client before this court is most certainly the "practice of law." See SCR 23.01(3) (defining the practice of law to include "[r]epresentation of another entity or person(s) in a court"). It is thus within the purview of our superintending authority to decide a question of representation.

¶12 Our supervisory authority is not to be invoked lightly. State v. Jennings, 2002 WI 44, ¶15, 252 Wis. 2d 228, 647 N.W.2d 142. Whether we choose to exercise our supervisory authority in a given situation is a matter of judicial policy rather than one relating to the power of this court. In re Phelan, 225 Wis. 314, 320, 274 N.W. 411 (1937). However, the "necessities of justice" require us to exercise our superintending authority here. See Arneson v. Jezwinski, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996). We determine that our

superintending authority over the courts and over the practice of law gives this court the power to resolve disputes regarding representation. Accordingly, on the facts of this case, we exercise our superintending authority to determine that Evers and DPI are entitled to counsel of their choice and are not required to be represented by DOJ.

¶13 We reach this conclusion because we are concerned about the implications of DOJ's argument. First, accepting DOJ's argument would foist upon Evers and DPI an attorney they do not want (and have discharged), taking a position with which they do not agree. This could have ethical implications for DOJ attorneys.[2] Second, accepting DOJ's argument would give the attorney general breathtaking power. It would potentially make the attorney general a gatekeeper for legal positions taken by constitutional officers, such as the governor or justices of this court sued in their official capacity.[3] DOJ's position would not allow a constitutional officer to take a litigation position contrary to the position of the attorney general. We decline to adopt this view.

---

[2] See SCR 20:1.16(a)(3) ("a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged.").

[3] Such a result appears to be at odds with this court's practice of appointing counsel for a "court, for judges sued in their official capacity . . . and for boards, commissions and committees appointed by the supreme court." See SCR 81.02(1).

7

¶14 This case serves as a good example as to why DOJ's position cannot be accepted. On its merits, this suit is about the constitutional scope of the superintendent's power. The superintendent cannot protect such power without a lawyer to argue his position. DOJ has indicated that it will not argue the superintendent's position, but its own. Accepting DOJ's position would leave no way to determine the scope of the powers vested in a constitutional officer and would essentially leave the attorney general, and not this court, to decide the scope of the superintendent's constitutional authority.

¶15 Thus, we grant Evers and DPI's motion to deny substitution of counsel and to disqualify the attorney general from appearing on behalf of respondents and deny DOJ's cross-motion to strike the appearance by attorneys Ryan Nilsestuen and Benjamin R. Jones.

III

¶16 We address next whether the governor must be joined as a necessary party to this action. The parties direct us to two possible statutory bases for our consideration. We examine each in turn.

A

¶17 DOJ directs us to Wis. Stat. § 803.03(1), which provides that a party shall be joined if any of three criteria apply: (1) in the person's absence complete relief cannot be accorded among those already parties; (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's

8

absence may as a practical matter impair or impede the person's ability to protect that interest; or (3) the disposition of the action would leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

¶18 None of the criteria set forth in Wis. Stat. § 808.03(1) is fulfilled. First, complete relief can be afforded even in the governor's absence. See § 803.03(1)(a). In examining this prong of the statute, we look to the requested relief for guidance. This is a declaratory judgment action seeking a declaration that Evers and DPI must comply with the REINS Act. Although the governor does have a role to play in the promulgation of rules pursuant to the REINS Act, a declaration would have the same effect on him whether he participates as a party or not.

¶19 The REINS Act, Wis. Stat. § 227.135(2), sets forth a task for both the Department of Administration and the governor. Pursuant to § 227.135(2), an agency seeking to promulgate a rule "shall present the statement [of scope] to the department of administration, which shall make a determination as to whether the agency has the explicit authority to promulgate the rule as proposed in the statement of scope and shall report the statement of scope and its determination to the governor who, in his or her discretion, may approve or reject the statement of scope." Similarly, § 227.185 provides a responsibility for the governor: "After a proposed rule is in final draft form, the

9

agency shall submit the proposed rule to the governor for approval. The governor, in his or her discretion, may approve or reject the proposed rule."

¶20 This case raises the question of whether DPI must submit a scope statement to the governor in the first instance. It does not raise the question of what the governor does with a scope statement if submitted. A declaration in this case will not affect the governor's responsibilities under the REINS Act. The governor will still review a scope statement if he receives one whatever the outcome of this case.

¶21 Second, not participating as a named party in this case will not as a practical matter impair or impede the governor's ability to protect his interest. See Wis. Stat. § 803.03(1)(b)1. Although case law does not state a clear test for when one has an "interest" in the context of § 803.03(1)(b)1., we take guidance from Dairyland Greyhound Park, Inc. v. McCallum, 2002 WI App 259, ¶15, 258 Wis. 2d 210, 655 N.W.2d 474. "The relevant inquiry in Wisconsin is thus not whether a prospective party has a legal or legally protected interest in the subject of an action, but whether the person or entity has an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment." Id. (internal quotations and citation omitted).

¶22 As stated above, the governor will neither gain nor lose by direct operation of the judgment here. His obligation remains the same no matter the outcome—to review a scope

10

statement if presented. The governor therefore has no legally protectable "interest" that would require necessary party status pursuant to Wis. Stat. § 803.03(1)(b)1.[4] Finally, the governor's absence will not leave any person who is already a party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations. See Wis. Stat. § 803.03(1)(b)2.

¶23 In sum, none of the criteria set forth in Wis. Stat. § 803.03(1) is fulfilled. Accordingly, § 803.03(1) cannot serve as authority for joining the governor as a necessary party.

B

¶24 We address next DPI's argument that the governor is a necessary party pursuant to the Declaratory Judgment Act. Wisconsin Stat. § 806.04(11) states in part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding."

¶25 "[T]he Declaratory Judgment Act does not require 'the joinder as parties, in a declaratory action to determine the validity of a statute or ordinance, of any persons other than the public officers charged with the enforcement of the

---

[4] This is not to say that the governor cannot participate as amicus curiae in this case. Further, pursuant to Wis. Stat. § 806.04(11), "[i]f a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard." It appears that the attorney general and the governor are in accord as to their position in this case.

11

challenged statute or ordinance.'" Helgeland v. Wisconsin Municipalities, 2008 WI 9, ¶140, 307 Wis. 2d 1, 745 N.W.2d 1 (citing White House Milk Co. v. Thomson, 275 Wis. 243, 249, 81 N.W.2d 725 (1957)). The court has not construed Wis. Stat. § 806.04(11) to require "that where a declaratory judgment as to the validity of a statute or ordinance is sought, every person whose interests are affected by the statute or ordinance must be made a party to the action." Id. (citing Town of Blooming Grove v. City of Madison, 275 Wis. 328, 334, 81 N.W.2d 713 (1957)). If the statute "were so construed, the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people." Id. As with Wis. Stat. § 803.03(1), we determine that the governor is not a necessary party pursuant to § 806.04(11). Although the governor has a role to play pursuant to the REINS Act, "every person whose interests are affected" need not be made a party. Helgeland, 307 Wis. 2d 1, ¶140 (emphasis added).

¶26 In sum, we conclude that Evers and DPI are entitled to their own counsel and are not required to be represented by DOJ. We further conclude that the governor is not a necessary party to this action. Accordingly, we grant Evers and DPI's motion to deny substitution of counsel and to disqualify the attorney general from appearing on behalf of respondents and deny the Department of Justice's cross-motion to strike the appearance by

attorneys Ryan Nilsestuen and Benjamin R. Jones. We further decline to order that the governor be added as a necessary party.

IT IS ORDERED that the Respondents' motion to deny substitution of counsel and to disqualify the attorney general from appearing on behalf of Respondents is GRANTED.

IT IS FURTHER ORDERED that the Department of Justice's cross-motion to strike the appearance by Attorneys Ryan Nilsestuen and Benjamin R. Jones is DENIED.

IT IS FURTHER ORDERED that the governor is not a necessary party to this action.

¶27 REBECCA GRASSL BRADLEY, J. *(concurring in part; dissenting in part).* "The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body." The Federalist No. 78, at 469 (Alexander Hamilton) (Clinton Rossiter ed., 1961). On one issue before us, the court correctly applies statutory law and concludes that the Governor is not a necessary party; I therefore concur in that part of the court's order. On the second issue, the majority ignores governing statutory law and instead invokes its ever-evolving "superintending authority" to substitute the majority's preference for that of the legislature. The majority's conclusion that the Superintendent of Public Instruction, Tony Evers, may select his own lawyer to represent him in an action in which he has been sued in his official capacity is grounded not in the rule of law but in a judicial policy predilection. The Wisconsin Constitution and the applicable statutes unmistakably require the Department of Justice to represent Evers. The majority's decision on representation flatly disregards the text of our constitution and statutes and threatens the separation of powers. I dissent.

I

¶28 Petitioners Kristi Koschkee, Amy Rosno, Christopher Martinson, and Mary Carney (collectively, "Koschkee") filed a petition in this court on November 20, 2017, seeking leave to commence an original action. The petitioners ask this court to declare 2017 Wis. Act 57 constitutional; require respondents,

14

Tony Evers, in his official capacity as Superintendent of Public Instruction ("Evers" or the "Superintendent"), and the Wisconsin Department of Public Instruction ("DPI") to comply with Act 57; and enjoin Evers and DPI from proposing or promulgating any rules without complying with Act 57.[1]

¶29 That same day, Attorney Ryan Nilsestuen, Chief Legal Counsel for DPI, sent a copy of the petition and petitioner's memorandum in support of it to the Department of Justice ("DOJ"). Subsequent communications between DPI's attorneys and DOJ revealed a deep rift between them on the underlying issue. Evers and DPI contended the petition was frivolous and Act 57 was unconstitutional based on this court's recent decision in Coyne v. Walker, 2016 WI 38, 368 Wis. 2d 444, 879 N.W.2d 520, in which the lead opinion held a similar statute to be unconstitutional. The DOJ and the Attorney General, on the other hand, maintained that they would advocate for the "State's" position in support of Act 57's constitutionality. Further communications showcased that because of this fundamental difference of opinion as to Act 57's constitutionality, DPI and DOJ were at odds as to who actually represented the DPI and Evers in his official capacity as Superintendent.

---

[1] At this stage, we do not decide the merits of the petition, which are scheduled for oral argument during the court's 2018-19 term. The background facts are provided solely to facilitate understanding of the underlying dispute.

15

¶30 On November 22, Attorney Nilsestuen hand-delivered a letter to this court, informing it that he and Attorney Benjamin R. Jones would represent Evers in the matter.[2] He then sent an email to the DOJ notifying it that DPI would not be requesting DOJ's representation, as provided in Wis. Stat. § 165.25(6). The DOJ replied to that email, attaching a copy of a notice of appearance and substitution of counsel, which stated that the Attorney General, by Solicitor General Misha Tseytlin and Chief Deputy Solicitor General Ryan Walsh, was replacing Attorney Nilsestuen as counsel for Evers in his official capacity as superintendent and the Attorney General, by Assistant Attorney General Maura F.J. Whelan, was also replacing him as counsel for DPI. Assistant Attorney General Daniel Lennington also sent an email to Attorney Nilsestuen stating the DOJ had received a request from the Governor for the DOJ to represent both DPI and the superintendent.

¶31 Attorney Nilsestuen asked for a copy of the request, which was not immediately provided. However, a confirmation email was sent to Assistant Attorney General Walsh on December 5, 2017, in which Katie Ignatowski, Chief Legal Counsel to the Governor, confirmed that she, on behalf of the Governor, had requested "that the Department of Justice appear for and represent the Department of Public Instruction and

---

[2] This letter did not state that Attorneys Nilsestuen and Jones also sought to represent DPI, although that seemed to be their intention based upon communications with this court and those between DPI and DOJ.

16

Superintendent Tony Evers in his official capacity . . . in accordance with Wis. Stat. § 165.25(1m)."

¶32 On November 28, 2017, Evers wrote to inform Attorney General Brad Schimel that he was "terminating any representation provided by the Wisconsin Department of Justice in this matter pursuant to SCR 20:1.16(a)-(c)." On November 29, 2017, Evers and DPI filed a motion to deny substitution of counsel and to disqualify the Attorney General from appearing on their behalf.

¶33 On December 11, 2017, DOJ filed a cross-motion to strike the appearances by Attorneys Nilsestuen and Jones. Along with it, the Attorney General filed a joint response to Evers and DPI's motion to deny substitution of counsel and a memorandum in support of its cross-motion to strike the appearance of Attorneys Nilsestuen and Jones. On December 18, 2017, Evers and DPI filed a motion for leave to file a response to DOJ's cross-motion to strike.

¶34 This court, in an order dated February 14, 2018, ordered responses from both Evers and DPI and DOJ on a number of issues, including whether Wis. Stat. § 165.25(1m) prohibits the Superintendent and DPI from selecting their own litigation counsel.[3] Following receipt of these responses, on April 13, 2018, we granted Koschkee's petition to commence an original action and scheduled oral argument for May 15, 2018, on the

---

[3] Pursuant to the February 14th order, Evers and DPI's lawyers filed a response brief on March 5, 2018 and DOJ filed a reply brief on March 12, 2018.

17

issues of representation as well as whether the Governor is a necessary party in these proceedings.

II

¶35 The Wisconsin Constitution in Article X, Section 1 provides: "The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law." "Article X, section 1 confers no more authority upon those officers than that delineated by statute." Fortney v. Sch. Dist. of W. Salem, 108 Wis. 2d 167, 182, 321 N.W.2d 225 (1982). Even in the fractured Coyne opinion, a majority of this court concluded that the Superintendent possesses no powers or duties beyond those specifically provided by the legislature. See Coyne, 368 Wis. 2d 444, ¶70 (lead opinion) ("As a result, the Legislature may give, may not give, and may take away the powers and duties of the [Superintendent] and the other officers of supervision of public instruction."); id., ¶¶36-37 ("There were no common law duties and powers that the [Superintendent] or any other officers of supervision of public instruction had traditionally possessed prior to the adoption of the Wisconsin Constitution because neither the office of the [Superintendent] nor a uniform system of public instruction existed prior the adoption of our constitution in 1848 . . . . Consequently, any rulemaking power the [Superintendent] and DPI has is clearly a delegation of power from the Legislature, not from the constitution."); id., ¶189 (Roggensack, C.J., dissenting)

18

(joined by Justices Annette K. Ziegler and Rebecca Grassl Bradley) ("Article X, Section 1 plainly granted the legislature control over both the power that the Superintendent could exercise and the duties that the Superintendent must undertake.").

¶36 The constitution creates the role of a state Superintendent and gives the Superintendent authority to supervise public instruction. That is all the constitution confers upon the Superintendent. The constitution is silent on whether the Superintendent may hire his own lawyer if he is sued in his official capacity. Rather, the constitution says the Superintendent's powers and duties shall be what the legislature prescribes. Accordingly, the constitution obligates us to examine the statutes to ascertain the Superintendent's powers and duties.[4]

---

[4] The majority misunderstands my analysis of the constitution, stating that "[t]he dissent fails to acknowledge the focus of our discussion. This order does not address the constitutional authority of superintendent of public instruction." Unfortunately, the majority's order ignores not only the constitution, but also the statutes requiring DOJ to represent the Superintendent and DPI in this matter, instead subordinating Wisconsin law to its whim. The point of examining the constitution is to determine whether it confers independent litigation authority on the Superintendent. It does not. The constitution provides that the legislature prescribes the Superintendent's powers. The legislature has not included appointment of counsel among the Superintendent's powers. What the legislature has done, which the majority defies, is enact a law mandating that DOJ represent the Superintendent and DPI in this suit. While I consult the law in determining whether the Superintendent and DPI may choose their own lawyer, the majority aggressively extends its superintending authority to override controlling law and approve counsel to advance the interests of

(continued)

19

¶37 No Wisconsin Statute gives the Superintendent the power to hire his own lawyer in this case——or to fire DOJ. Wisconsin Stat. ch. 115, subch. II——entitled "State Superintendent of Public Instruction"——describes the "qualifications, powers, duties and compensation" of the Superintendent. Wholly absent from that chapter is any mention of litigation authority.

¶38 The statutes, however, affirmatively and definitively place the duty of representation on DOJ.[5] Wisconsin Stat. § 165.25 (2015-16)[6] provides as material:

> Duties of department of justice. The department of justice shall:
>
> (1) Represent state in appeals and on remand. Except as provided in ss. 5.05 (2m) (a), 19.49 (2) (a), and 978.05 (5), appear for the state and prosecute or defend all actions and proceedings, civil or criminal, in the court of appeals and the supreme court, in which the state is interested or a party, and attend to and prosecute or defend all civil cases sent or remanded to any circuit court in which the state is a party. Nothing in this subsection deprives or

---

the Superintendent instead of the interests of the people of Wisconsin.

[5] The Attorney General is also a constitutional officer, recognized in Article VI, Section 3 of the Wisconsin Constitution: "The powers, duties and compensation of the . . . attorney general shall be prescribed by law." Under the constitution, "the attorney general's powers are prescribed only by statutory law." State v. City of Oak Creek, 2000 WI 9, ¶24, 232 Wis. 2d 612, 605 N.W.2d 526.

[6] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

relieves the attorney general or the department of justice of any authority or duty under this chapter.

(1m) Represent state in other matters. If requested by the governor or either house of the legislature, appear for and represent the state, any state department, agency, official, employee or agent, whether required to appear as a party or witness in any civil or criminal matter, and prosecute or defend in any court or before any officer, any cause or matter, civil or criminal, in which the state or the people of this state may be interested. The public service commission may request under s. 196.497 (7) that the attorney general intervene in federal proceedings. All expenses of the proceedings shall be paid from the appropriation under s. 20.455 (1) (d).

(6)(a) Attorney for the state. At the request of the head of any department of state government, the attorney general may appear for and defend any state department, or any state officer, employee, or agent of the department in any civil action or other matter brought before a court or an administrative agency which is brought against the state department, or officer, employee, or agent for or on account of any act growing out of or committed in the lawful course of an officer's, employee's, or agent's duties. Witness fees or other expenses determined by the attorney general to be reasonable and necessary to the defense in the action or proceeding shall be paid as provided for in s. 885.07. The attorney general may compromise and settle the action as the attorney general determines to be in the best interest of the state. Members, officers, and employees of the Wisconsin state agencies building corporation and the Wisconsin state public building corporation are covered by this section. Members of the board of governors created under s. 619.04 (3), members of a committee or subcommittee of that board of governors, members of the injured patients and families compensation fund peer review council created under s. 655.275 (2), and persons consulting with that council under s. 655.275 (5) (b) are covered by this section with respect to actions, claims, or other matters arising before, on, or after April 25, 1990. The attorney general may compromise and settle claims

asserted before such actions or matters formally are brought or may delegate such authority to the department of administration. This paragraph may not be construed as a consent to sue the state or any department thereof or as a waiver of state sovereign immunity.

(Emphasis added.) Nothing in the constitution or the statutes grants litigation authority to Evers or DPI, but there is a very specific statute placing that power upon DOJ. "Absent [a] special statute with respect to individual departments . . . or absent appointment of special counsel in appropriate matters," DOJ lawyers "are the only attorneys authorized to appear in the courts of the state in state matters." 52 Wis. Op. Att'y Gen. 394, 402 (OAG 1963).

III

¶39 It is undisputed that the Governor requested DOJ to represent DPI and Evers in this suit. It is also undisputed that the petitioners sued Evers in his official capacity as the head of DPI. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citation omitted). This action, then, is a suit against the State——Evers is simply a nominal party, named solely because he is currently the individual occupying the office of the Superintendent.

¶40 Because the Governor requested DOJ representation, this action falls squarely under Wis. Stat. § 165.25(1m), which explicitly says DOJ "shall" represent the State. In § 165.25,

22

the legislature placed the responsibility of legal representation with DOJ. The legislature did not give any authority to the Superintendent to deviate from § 165.25 and hire an attorney of his own choosing. And, because the legislature circumscribes the qualifications, powers, and duties of the Superintendent, the disposition of the legal representation issue should have been as simple as reading and applying the text of § 165.25.[7] The power to "protect and guard the interests and rights of the people" by controlling state-party litigation resides in DOJ by virtue of this statutory authority. See Orton v. State, 12 Wis. 567, 569 (1860).

¶41 The majority neglects to even mention this statute and instead exercises the court's supervisory authority over the court system to proclaim that Evers may hire the lawyer of his choosing when he is sued in his official capacity as Superintendent, even though the people of Wisconsin said otherwise——through their legislative representatives who enacted Wis. Stat. § 165.25. While the constitution gives the court "superintending and administrative authority over all courts," Wis. Const. art. VII, § 3, this authority should not be exercised lightly. State v. Jennings, 2002 WI 44, ¶15, 252

---

[7] Evers suggests Wis. Stat. § 20.930 grants litigation authority for his in-house lawyers to represent him instead of DOJ. Section 20.930, however, is simply a fiscal statute authorizing payment of the in-house lawyers. It does not authorize Evers to hire his own lawyer when he is sued in his official capacity.

Wis. 2d 228, 647 N.W.2d 142. It certainly should not be exercised contrary to controlling law. And it never should be exercised in a manner that elevates the interests of public officials over the interests of the people who elect them. This court is not above the law and unless the statute is unconstitutional, we are bound to apply it. See Rhinelander Paper Co. v. Indus. Comm'n, 216 Wis. 623, 258 N.W. 384 (1935) (court cannot order lower court to do something it has no power to do because it would violate applicable statute); Baker v. State, 84 Wis. 584, 54 N.W. 1003 (1893) (court has no power to suspend rules having the force of a statute until abrogated by competent authority).

¶42 Historically, the court's superintending authority was exercised exclusively over lower courts. "The power of superintending control is the power to 'control the course of ordinary litigation in inferior courts,' as exercised at common law by the court of king's bench, and by the use of writs specifically mentioned in the constitution and other writs there referred to or authorized." Seiler v. State, 112 Wis. 293, 299, 87 N.W. 1072 (1901). See also State v. Jerrell C.J., 2005 WI 105, ¶¶137-153, 283 Wis. 2d 145, 699 N.W.2d 110 (Prosser, J., dissenting), which exhaustively analyzes the original meaning of the court's superintending authority and contrasts it with the "incredibly elastic power the court now employs." Id., ¶146. The court's supervisory authority is ordinarily exercised when a party asserts error by the circuit court causing "great and irreparable" "hardship." Application of Sherper's, Inc., 253

24

Wis. 224, 226, 33 N.W.2d 178 (1948); State ex rel. Wis. State Dep't of Agric. v. Aarons, 248 Wis. 419, 423, 22 N.W.2d 160 (1946). Superintending authority, as the majority acknowledges, means supervisory power. The text of the constitution limits this court's superintending authority to "the courts." Superintending authority has no place in this original action, in which the court illogically exercises its authority to ostensibly supervise itself.

¶43 The majority creates a dangerous precedent. It brandishes its superintending authority like a veto over laws it does not wish to apply. In doing so, it thwarts the will of the people. "To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them." The Federalist No. 78, supra ¶1, at 469 (Alexander Hamilton). Wisconsin Stat. § 165.25 could not be clearer in mandating DOJ representation of DPI and Evers in this case, yet the court does not apply it. The majority's decision promotes the interests of an elected public official and the department he heads over those of the people of Wisconsin, whose interests are supposed to be represented in this litigation by the attorneys charged with advancing them——the Attorney General and DOJ. Long ago, the people of Wisconsin gave the Attorney General the duty——and the exclusive authority——to appear for the people in order to "protect and guard the interests and rights of the people" in litigation involving state actors. Orton, 12 Wis. at 569. The

25

majority casts aside the statutorily-expressed will of the people but "[t]he people of Wisconsin have never bestowed this kind of power on the Wisconsin Supreme Court." Jerrell C.J., 283 Wis. 2d 145, ¶155 (Prosser, J., dissenting).

¶44 Ironically, as it wields a boundless power to disregard the law, the majority decries the "breathtaking power" accorded to the Attorney General if DOJ represents the superintendent and DPI. The majority claims that if DOJ represents these parties, the court would have "no way to determine the scope of the powers vested in a constitutional officer" and somehow, the court fears, "the attorney general, and not this court" would "decide the scope of the superintendent's constitutional authority." Nonsense. The Attorney General's power is of course restricted to advocacy; it is this court's duty to say what the law is, and the court alone possesses the power to decide. "No aspect of the judicial power is more fundamental than the judiciary's exclusive responsibility to exercise judgment in cases and controversies arising under the law." Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶37, 376 Wis. 2d 147, 897 N.W.2d 384. This is true regardless of who represents a party. If the majority's concern is ensuring a full adversarial presentation of the issues, it should exercise a power it actually does possess and appoint counsel selected by Evers and DPI as amicus to advance arguments that Act 57 is unconstitutional while DOJ defends the law.

¶45 Rather than take this lawful course, the majority inexplicably invokes its inherent power to appoint counsel for a

26

party that lacks one. But this power is utterly misplaced in this case. The Superintendent and DPI do not lack counsel——their hand-picked attorneys made an appearance and continue as counsel of record——and the majority does not actually appoint counsel at all. Instead, the majority strikes the appearance of the Attorney General on behalf of these state parties, which the law requires be represented by DOJ, and then disqualifies the Attorney General from representing the Superintendent or DPI. The majority characterizes this as an "exceptional case." Indeed, it is exceptional for the majority's shocking exercise of raw power to arrogate unto itself the authority to decide who shall represent a party when the legislature has already spoken. The people of Wisconsin decided that the Attorney General shall represent their interests in litigation involving state parties but the majority instead foists upon the people lawyers they do not want——lawyers who will not represent their interests.

¶46 The majority identifies perceived ethical conflicts if the Attorney General represents Evers, but its concerns are unwarranted. No ethical conflicts exist. As the nominal party without any constitutional or statutory litigation authority, Evers lacks power to advocate independently for what he wants the law to be. His sole interest with respect to Act 57 or any other law is a determination of what the law says so that he can fulfill his responsibility to follow it. The people of Wisconsin did not assign the Superintendent the task of deciding what the law is. The constitution ascribes that duty to the judicial branch. See Tetra Tech EC, Inc. v. DOR, 2018 WI 75,

27

___ Wis. 2d ___, ___ N.W.2d __ ("Only the judiciary may authoritatively interpret and apply the law in cases before our courts."); Gabler, 376 Wis. 2d 147, ¶37 ("By vesting the judicial power in a unified court system, the Wisconsin Constitution entrusts the judiciary with the duty of interpreting and applying laws made and enforced by coordinate branches of state government."); see also Operton v. LIRC, 2017 WI 46, ¶73, 375 Wis. 2d 1, 894 N.W.2d 426 (R. Grassl Bradley, J., concurring) ("the court's duty to say what the law is" constitutes a "core judicial function"); In re Appointment of Revisor, 141 Wis. 592, 598, 124 N.W. 670 (1910) ("[I]t is the exclusive function of the courts to expound the laws . . . .").

¶47 Evers complains that DOJ disagrees with his position on what the law should be and that the Rules of Professional Conduct prohibit representation by a lawyer who insists on advocating a position contrary to what the "client" wants. That is true when the "client" is a private party. The problem with Evers' complaint is that the legislature has already decided that Evers' individual standpoint when sued in his official capacity is irrelevant. Evers has not been sued personally; he was named only in his official capacity as the head of DPI. The Attorney General is "the law officer of the government" and was "elected for the purpose of prosecuting and defending all suits for or against the State." Orton, 12 Wis. at 569. When the Governor (or the legislature) asks DOJ to represent a party under Wis. Stat. § 165.25(1m), DOJ does not represent the individual person who currently occupies the office——it

28

represents the officer and agency as state parties. If the agency or officer acting in his official capacity was not a state party, the Governor could not obtain DOJ representation under § 165.25(1m).

¶48 Evers argues that because the legislature did not include in Wis. Stat. § 165.25(1m) language explicitly granting litigation-decisional control to the Attorney General, the Attorney General must advance the state officer's personal position in the case even if it conflicts with the Attorney General's interpretation of the law. Evers makes this argument based on the litigation-decisional control language in Wis. Stat. § 165.25(6)(a), which is the statutory section applicable when the department head (rather than the Governor) requests DOJ representation.[8]

¶49 Evers' argument defies logic. Why would a department head who does not ask for DOJ representation be able to control the Attorney General's litigation position but a department head who does seek DOJ representation cannot? A consistent reading of these statutes suggests the express grant of settlement authority is unnecessary in sub. (1m) because the legislature or Governor requested the representation on behalf of the official or department. In contrast, under sub. (6)(a), the department

---

[8] The specific sentence, emphasized earlier in the body of this opinion setting forth Wis. Stat. § 165.25(6)(a), provides: "The attorney general may compromise and settle the action as the attorney general determines to be in the best interest of the state."

29

head requests DOJ representation; therefore, it is important to emphasize that despite the department head's initiation of the representation, the Attorney General must nevertheless act in "the best interest of the state" rather than take litigation instructions from the department head.

¶50 When an agency and an official acting in his official capacity are sued, and the Governor asks DOJ to provide representation, DOJ is in charge of litigation strategy because the State is the real party in interest, not the nominal figurehead. The Attorney General represents the interests of the State——which, it bears emphasizing, means the interests of the people. The Attorney General is not Evers' private, personal lawyer as in a typical lawyer-client relationship. Wisconsin's Rules of Professional Conduct recognize the difference: "[T]he responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships." SCR 20 Preamble: A Lawyer's Responsibilities, n.18.[9] Rather, the representation relationship here is based on a provision of statutory law, namely Wis. Stat. § 165.25(1m).

---

[9] Note 18 specifically references the Attorney General in this regard: "For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts . . . ."

¶51  The legislature also enacted Wis. Stat. § 14.11(2)(a)2 to allow for "special counsel" in certain circumstances, i.e., when the Attorney General has an interest truly adverse to the State, which is not the case here.  Id. (allowing the Governor to appoint "special counsel" "[t]o act instead of the attorney general in any action or proceeding, if the attorney general is in any way interested adversely to the state").  In this case, Evers did not make a request for "special counsel" under Wis. Stat. § 14.11(2)(a)2 despite emails between DPI and DOJ lawyers discussing that option.

¶52  If Evers does not like the statutes prescribing this representation scheme, he should take it up with the legislature to amend them.  Until then, he is bound by the statutes as currently written.  The law requires the Attorney General to represent Evers and DPI.  The majority permits Evers to exercise unbridled, independent litigation authority in his own interests rather than the interests of the people of Wisconsin.  The majority's extraordinary exercise of its superintending authority elevates the Superintendent and his department to a specter fourth branch of Wisconsin government.  The constitution does not authorize this representation.  The statutes prohibit it.  The majority errs in disregarding both.

¶53  I concur in part and dissent in part.[10]

_____

[10] I would follow the United States Supreme Court practice when DOJ's position on representation is a confession-of-error. In this case, I would appoint DPI lawyers as amicus and have them submit briefs and argue the adversarial position asserting the unconstitutionality of Act 57.

31

¶54  I  am  authorized  to  state  that  Justices  MICHAEL  J. GABLEMAN and DANIEL KELLY join this concurrence/dissent.