ANN WALSH BRADLEY, J. (dissenting).
¶57 There is no dispute in this case that the circuit court gave Corey Fugere incorrect information regarding the length and nature of the commitment he faced upon pleading not guilty by reason of mental disease or defect (NGI). Fugere was told that he faced a maximum 60 year term of "supervision," when he actually faced a maximum 40 year term of commitment to an institution.
¶58 Sixty, however, is not forty and supervision is not commitment to an institution.
¶59 Nevertheless, the majority indicates that the incorrect information matters not, and denies Fugere the opportunity to withdraw his plea. It concludes first that "a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase...." Majority op., ¶2. Second, the majority concludes that the misinformation provided by the circuit court with regard to the length and nature of the commitment he faced was harmless. Id., ¶ 3.
¶60 I disagree with both of these erroneous conclusions. In State v. Brown this court previously stated, "[i]f a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea."
*115 2006 WI 100, ¶ 37, 293 Wis. 2d 594, 716 N.W.2d 906. This statement is just as true in the NGI context as it is in a criminal case.
¶61 Here Fugere received only half of the story. Although he was accurately informed of the potential prison sentence in the event his NGI defense was unsuccessful, he was deprived of essential information regarding the implications of his NGI plea. As we have done in the past to remedy such a violation, I would invoke this court's superintending authority to ensure that NGI defendants receive full and accurate information about the consequences of their pleas.
¶62 Further, the errors in this case were not necessarily harmless. The circuit court was off the mark by 20 years and incorrectly advised the defendant that he would be placed on supervision rather than confined to an institution.
¶63 Because we do not know based on the record before us how the errors affected Fugere's calculations in entering his plea, we should remand to the circuit court for a Bangert hearing. See State v. Bangert, 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986). Accordingly, I respectfully dissent.
I
¶64 The majority's first error lies in its determination that "a circuit court is not required to inform an NGI defendant of the maximum possible term of civil commitment at the guilt phase...." See majority op., ¶2.
¶65 In Bangert, this court established a mandatory rule that the circuit court must "determine a defendant's understanding of the nature of the charge at the plea hearing by following any one or a combination *116 of the [denominated] methods." Bangert, 131 Wis. 2d at 267, 389 N.W.2d 12. This rule encompasses a requirement that a circuit court must, in its plea colloquy, *488 "[e]stablish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea." Brown, 293 Wis. 2d 594, ¶ 35, 716 N.W.2d 906.
¶66 The procedures established in Bangert apply equally to the NGI context. In State v. Shegrud, this court determined that "a court faced with a defendant entering a plea of not guilty by reason of mental disease or defect must address the defendant personally to determine whether the defendant is entering the plea voluntarily with an understanding of the nature of the charge." 131 Wis. 2d 133, 138, 389 N.W.2d 7 (1986).
¶67 Bangert's chief aim was to "ensure a knowing, intelligent, and voluntary plea" by requiring "that a trial judge explore the defendant's capacity to make informed decisions." Brown, 293 Wis. 2d 594, ¶ 30, 716 N.W.2d 906. As the Brown court explained, "[t]he duties established ... in Bangert... are designed to ensure that a defendant's plea is knowing, intelligent and voluntary. The faithful discharge of these duties is the best way we know for courts to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems." Id., ¶ 23. Put simply, "[i]f a defendant does not understand the nature of the charge and the implications of the plea, he should not be entering the plea and the court should not be accepting the plea." Id., ¶ 37.
¶68 Neither the Constitution nor Wis. Stat. § 971.08 require the sort of plea colloquy for which Bangert provides. Instead, Bangert and its requirements act as a prophylactic measure "[t]o head off *117 postconviction hearings on plea withdrawals...." Brown, 293 Wis. 2d 594, ¶ 33, 716 N.W.2d 906.
¶69 Thus, rather than relying on constitutional or statutory principles, the court in Bangert and Shegrud forged its procedure as a function of this court's superintending authority. Bangert, 131 Wis. 2d at 267, 389 N.W.2d 12 ; Shegrud, 131 Wis. 2d at 138, 389 N.W.2d 7 ; see Wis. Const. art. VII, § 3 (1) (granting this court "superintending and administrative authority over all courts"); Koschkee v. Evers, 2018 WI 82, ¶ 8, 382 Wis. 2d 666, 913 N.W.2d 878. Our superintending authority is "as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975).
¶70 As in Shegrud and Bangert, here the court would be wise to utilize its superintending authority. Specifically, Shegrud should encompass not only an advisement of the potential prison sentence an NGI defendant faces, but be extended to encompass the potential period of mental health commitment as well. This minimal extension would ensure that NGI defendants are provided with all relevant information on which to base their decision to enter a plea.
¶71 Such a use of our superintending authority is appropriate because the principles that drove Bangert and Shegrud apply with equal force here. The "due administration of justice" requires that NGI defendants are properly and accurately informed of the potential commitments they face. If the court is truly concerned with ensuring that a defendant's plea is the result of informed decision-making, then circuit courts should be required to ascertain whether the defendant understands the consequences of a successful NGI defense. This requirement includes ascertaining *118 whether the defendant understands the maximum possible term of commitment and its nature.
¶72 However, under the majority's rule, Fugere and future defendants who enter *489 stand-alone NGI pleas can receive incomplete information regarding what could happen to them as a result of their pleas. When the circuit court informs an NGI defendant of the maximum prison sentence only, the defendant receives just half of the information needed to make an informed decision.
¶73 In other words, if the defendant is found to be not guilty by reason of mental disease or defect, then the prison sentence is merely hypothetical. It is commitment, and not imprisonment, that will actually come to fruition. Yet the defendant is only informed of one possible sanction when there are two distinct possibilities-commitment or prison.
¶74 This court should ensure that defendants pleading NGI are provided with information that is actually useful to them and will assist in making informed decisions regarding their pleas. Accordingly, I would invoke this court's superintending authority to minimally extend Shegrud. Circuit courts should be required not only to inform defendants of the maximum penalty if found guilty of the charge, but also to accurately inform NGI defendants of the maximum commitment they face.
II
¶75 The majority's second error lies in its conclusion that the misinformation given by the circuit court was harmless. See majority op., ¶3. Two significant *119 pieces of inaccurate information marred the plea colloquy in this case.[1] I address each in turn.
¶76 First, the circuit court misstated the maximum commitment Fugere could receive. The circuit court told Fugere he faced a maximum commitment of sixty years, when he actually faced forty years.[2]
¶77 Such an error is not necessarily harmless. "When a defendant is told that he faces a higher punishment than provided by law and pleads guilty, the plea colloquy is on its face defective under Bangert." State v. Cross, 2010 WI 70, ¶ 48, 326 Wis. 2d 492, 786 N.W.2d 64 (Abrahamson, C.J., concurring). Likewise, because I determine that a circuit court should be required to advise a defendant pleading NGI of the maximum term of commitment, the same principle applies here.
*120 ¶78 Fugere was told he faced a longer period of commitment than he actually faced. At this stage of the proceedings, we do not know how this error affected Fugere's calculations in entering his plea.
¶79 Second, the circuit court mistakenly stated that Fugere faced a period of "supervision," when he actually faced "commitment." Again, such an error is not necessarily harmless.
*490 ¶80 Just as there is a significant difference between sixty years and forty years, there likewise can be a significant difference between supervision and commitment. Although supervision is often served in the community, commitment can involve institutional care. Compare Wis. Stat. § 302.113 with § 971.17(3).
¶81 The majority indicates that "[t]he circuit court addressed Fugere's committed status on the record at the hearing and confirmed that Fugere was familiar with how the commitment process worked." Majority op., ¶52. An experience of a prior commitment proceeding presents a slim reed upon which to rest a conclusion that a plea is knowingly, intelligently, and voluntarily made.[3] But even if the majority were correct, wouldn't the specification that he faced "supervision" instead of "commitment" be particularly relevant to an individual familiar with the commitment process?
*121 ¶82 Again, given the current state of the record we do not know if or how these errors affected Fugere's calculations in entering his plea. Accordingly, I would remand to the circuit court for a Bangert hearing at which the State has the burden of proof to demonstrate by clear and convincing evidence that the defendant's plea was knowingly, intelligently, and voluntarily entered despite the deficiencies in the plea hearing. See Bangert, 131 Wis. 2d at 274-75, 389 N.W.2d 12.
¶83 For the reasons set forth above, I respectfully dissent.
¶84 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and REBECCA FRANK DALLET join this dissent.

The majority bases its determination that the errors were harmless on the assertion that they were "unrelated to the guilt phase of the NGI defense...." Majority op., ¶3. However, the record reflects that there was a single plea colloquy instead of two separate proceedings. The guilt and responsibility phases were addressed by the circuit court during the span of the single twenty-minute plea hearing.

The majority paints with a very broad brush in appearing to declare that a circuit court's errors in inaccurately conveying the maximum period of commitment will always be harmless. See majority op., ¶51 ("As we have concluded that there is no requirement for a circuit court to inform NGI defendants of the maximum possible term of confinement, a circuit court's failure to convey, or to accurately convey it cannot render an NGI defendant's plea unknowing, unintelligent, or involuntary.") (emphasis added). Such a pronouncement is ill-advised and eyebrow-raising. If Fugere were told that he faced a maximum of one year of "supervision" when he actually faced a forty year commitment to an institution, would the error really be harmless? The majority appears to say that it would.

The circuit court's "confirmation" of Fugere's understanding was quite cursory. The transcript of the plea hearing reflects the following brief exchange:
THE COURT: You've been on a conditional release on a different case here before, right?
THE DEFENDANT: Yes.
THE COURT: Do you understand what that's all about?
THE DEFENDANT: Yes.